# 25-3063-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

JIANQIAO LU,
*Plaintiff-Appellant*,

v.

GEORGE HERMANS, SULAHUDDEEN AZIM, WESTCHESTER COUNTY,
*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF OF PLAINTIFF-APPELLANT

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW FNT 1
#33821
Washington, DC 20033
(202) 455-4399

*Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

STATEMENT OF JURISDICTION ..................................................... 1

STATEMENT OF THE ISSUES ........................................................... 3

STATEMENT OF THE CASE .............................................................. 3

STANDARD OF REVIEW .................................................................. 8

SUMMARY OF ARGUMENT .............................................................. 8

ARGUMENT ....................................................................................... 9

I.  Lu's Allegations State a Claim for First Amendment Retaliation. ................... 9
    *a)  Protected conduct* ...................................................................... 10
    *b)  Adverse action* .......................................................................... 10
    *c)  Causation* ................................................................................... 13

II.  The District Court Erred in Dismissing Lu's Claims for First Amendment Retaliation. ..................................................................... 15
    *a)  The district court erred in discarding Lu's allegations as conclusory merely because two were pled "Upon Information and Belief."* ..................... 15
    *b)  Government conduct can be an adverse action even if otherwise constitutional.* ................................................................................ 21

CONCLUSION .................................................................................... 25

i

# TABLE OF AUTHORITIES

### A.    Cases

*Allen v. Cuomo*, 100 F.3d 253 (2d Cir. 1996)                                      19

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)                16, 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)                                          8, 16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007)      16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)                           8, 16

*Bennett v. Goord*, 343 F.3d 133 (2d Cir. 2003)                                  11

*Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008)                            16, 17

*Chappelle v. Beacon Commc'ns Corp.*, 84 F.3d 652 (2d Cir. 1996)            2

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995)                          11, 13, 19

*Connecticut Nat. Bank v. Fluor Corp.*, 808 F.2d 957 (2d Cir. 1987)          2

*Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003)                                    10

*DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000)                                 12

*Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009)                               9, 13

*Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988)                                   21

*Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002)                                   11

*Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004)                         10, 11, 22

*Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001)                                 12

*Graham v. Henderson*, 89 F.3d 75 (2d Cir. 1996)                                 10

*Morales v. Mackalm*, 278 F.3d 126 (2d Cir. 2002)                                13

*Perry v. Sindermann*, 408 U.S. 593 (1972)                                       21

*Salmon v. Blesser*, 802 F.3d 249 (2d Cir. 2015)                                  2

*Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020)                                 12

*Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009)                       8

*Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005)                             12

*Sykes v. Bank of Am.*, 723 F.3d 399 (2d Cir. 2013)                              20

*Walker v. Senecal*, 130 F.4th 291 (2d Cir. 2025)                                10

*Withrow v. Larkin*, 421 U.S. 35 (1975)                                          19

**B.    Statutes**

28 U.S.C. § 1291                                                                                   1

28 U.S.C. § 1331                                                                                   1

42 U.S.C. § 1983                                                                                   1

**C.    Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224
(3d ed. 2004)                                                                                      16

Fed. R. App. P. 4(a)(1)(A)                                                                         1

Fed. R. Civ. P. 12(b)(6)                                                                           8

[TK

## STATEMENT OF JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331. Lu brought this action under 42 U.S.C. § 1983, alleging that Defendants retaliated against him for exercising his First Amendment right to petition the government for redress of grievances. A-25.

This Court has jurisdiction under 28 U.S.C. § 1291. On November 7, 2024, the district court granted Defendants' motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), dismissing several theories of First Amendment retaliation with prejudice and dismissing the remainder of the retaliation claim without prejudice and with leave to amend.[1] A-22. The court explained to Lu that he could either amend in an attempt to state claims under the latter theories or, if he failed to, "those claims that were dismissed without prejudice shall be deemed dismissed with prejudice." A-24.

Rather than amending, Lu moved to reconsider. A-41. The district court denied the motion on November 25, 2025. *Id.* Lu then wrote to the court explaining that he did not wish to amend but would rather "stand on [his] original pleading" so that he could "pursue an appeal of the Court's various decisions in this matter." A-47. He therefore "respectfully request[ed] that the Court issue an order (1)

---

[1] The court also dismissed Lu's *Monell* claim without prejudice, which he later abandoned and which Lu does not contest on appeal.

dismissing the complaint with prejudice and (2) directing the Clerk of Court to close this case and enter judgment on the docket." *Id.* The court did so, entering a final order and judgment dismissing the complaint with prejudice and directing that the case be closed. A-9. Lu filed a timely notice of appeal on December 4, 2025. Fed. R. App. P. 4(a)(1)(A); A-8.

The judgment is final and appealable notwithstanding that it was entered at Lu's request. The district court mischaracterized Lu's request as "voluntarily dismissing his Complaint." A-8. A plaintiff who declines an explicit opportunity to replead to stand on his complaint, however, does not voluntarily dismiss it but rather asks the court to ripen its own conditional dismissal into a final, appealable judgment. *See Salmon v. Blesser*, 802 F.3d 249, 252 n.2 (2d Cir. 2015). This Court has long held that such a written disclaimer confers appellate jurisdiction on this Court. *See id.*; *Connecticut Nat. Bank v. Fluor Corp.*, 808 F.2d 957, 960 (2d Cir. 1987) ("disclaimer of intent to amend effectively cures the nonfinal character of the judgment"). Even if the district court was correct and Lu had voluntarily dismissed his complaint, this Court would still have jurisdiction because he sought and obtained dismissal with prejudice. *See Chappelle v. Beacon Commc'ns Corp.*, 84

2

F.3d 652, 653–54 (2d Cir. 1996) (permitting appeal following voluntary dismissal "with prejudice," while barring it where the dismissal is "without prejudice").[2]

## STATEMENT OF THE ISSUES

I. Whether Lu's allegations state a claim for First Amendment retaliation.

II. Whether the district court erred in dismissing Lu's complaint.

## STATEMENT OF THE CASE

### I. Factual Background[3]

Starting in 2021, Jianqiao Lu spent several years being held as a pretrial detainee in the Westchester County Department of Correction. A-26. Shortly after arriving, he obtained employment at the jail. A-27. Although employment was competitive, he rose through the trustee ranks and ultimately secured four different trustee positions. *Id.* These jobs paid him 195 dollars per week and provided additional benefits that amounted to roughly 140 dollars per week. *Id.* He received

---

[2] The U.S. Supreme Court's more recent intervention into this area, *Microsoft Corp. v. Baker*, does not suggest a different result. 582 U.S. 23 (2017). *Baker* held only that a plaintiff may not manufacture appellate jurisdiction over an inherently interlocutory order—there, the denial of class certification—by voluntarily dismissing viable claims with prejudice. Lu did not seek review of an interlocutory order but rather sought appellate review of claims dismissed on the merits under Rule 12(b)(6) rather than running out the clock on the court's own conditional order. *Baker*'s concern with circumventing the final-judgment rule is therefore not implicated.

[3] This Court must accept as true the following allegations from Mr. Lu's complaint and draw all reasonable inferences in his favor. *See Collymore v. Krystal Myers, RN*, 74 F.4th 22, 29 (2d Cir. 2023).

housing set aside for trustees, referred to as the "penthouse" for its relatively comfortable conditions of confinement. *Id.*

On September 18, 2023, a staff member, C.B., improperly targeted him for a strip search.[4] *Id.* C.B. told Lu that he would be strip searched daily pursuant to department policy. *Id.* Lu explained that in fourteen months of doing that same job he had never been strip searched. *Id.* Lu asked C.B. for a copy of the policy, and C.B. refused. A-28. Lu nonetheless complied with the strip search, which yielded negative results. *Id.*

The following day, Lu filed a grievance challenging the propriety of the search. *Id.* That same evening, he was again strip searched. *Id.* On September 20, he filed a second grievance complaining about the second search. *Id.* That evening, for the third night in a row he was required to strip naked and be searched. *Id.* The following day, he filed a third grievance and handed it to Captain Hermans. *Id.* The grievance explained that the strip searches were illegal and designed to humiliate him rather than achieve penological objectives. *Id.* Lu explained he would sue if they persisted. *Id.*

The next morning, Lu was awakened by banging on his cell. *Id.* Staff handcuffed him and shook down his cell, damaging his family photos and scattering

---

[4] Lu's complaint refers to jail employees who are not parties to the suit by their initials to protect their anonymity. A-27.

his legal papers. *Id.* Captain Hermans was the shift commander that morning, and Lu believes that he ordered the search. A-29. Minutes after the shakedown, Sergeant S.B. returned Lu's third grievance and said that Captain Hermans would not accept it because the "form wasn't filled out correctly." *Id.* Lu corrected the purported error and resubmitted. *Id.* 45 minutes later, the same sergeant returned with a misbehavior report charging him with "Disorderly Conduct" and "Possession of Any Contraband." *Id.* The report alleged that the cell search uncovered "pens, highlighters, and a paper clip" which were "contraband" and that a Thanksgiving-themed ticker had "tested positive" for a substance considered contraband. *Id.* Lu explained that he was unaware that the innocuous stationery items were contraband and that the sticker had already been tested and cleared by the mail room as not containing contraband. *Id.* The sergeant responded by saying that the matter was "above her pay grade" and she was just "following orders." A-30. Lu believes that Captain Hermans ordered his subordinates to fabricate the contraband charges and create the misbehavior report. *Id.*

After the report, Lu was promptly suspended from his jobs and evicted from his housing unit on Captain Hermans's orders. *Id.* Hermans falsely and repeatedly told other staff that Lu had been caught with drugs. *Id.* These rumors spilled over into his criminal proceeding, where a prosecutor in his case falsely claimed he had been caught in possession of controlled substances while in pretrial detention. *Id.*

On September 26, Lu appeared before the Department's Disciplinary Hearing Officer, Captain Azim. *Id.* Azim remarked at the beginning of the hearing "I can see why your cell got searched," a reference to his grievance. *Id.* Lu admitted at the hearing that he possessed the stationery items but explained that the stickers arrived in an approved package that would have already been tested for contraband and that he could provide documentation as such. *Id.* Captain Azim did not let him present this information and found him guilty of all charges. *Id.*

Two days later, Lu received a response regarding his third grievance about the strip searches. A-32. The staff member attributed the strip searches he had received to the contraband found in his cell. *Id.* This explanation was obviously pretextual, as all three strip searches occurred before contraband was purportedly found in his cell. *Id.* This purported finding of contraband, however, served two purposes for Captain Hermans: first, it justified the earlier strip searches and, second, it ended Lu's challenge to any future strip searches because he lost his job which is where such searches would occur. *Id.*

Despite a spotless disciplinary record and a stellar performance working as a trustee for two years, Lu was sentenced to twenty days' punitive confinement (called "keeplock") and sent to the "Old Jail," a section notorious for its harsh conditions. A-30–31. He was terminated from all of his job assignments. A-31. Lu was one of the most senior and highest paid trustees, and his abrupt firing and transfer sent

6

"shock waves" through the trustee group, conveying a warning not to file grievances. *Id.* The message worked. *Id.* The number of grievances originating from the trustee unit sharply decreased. *Id.* Lu too was subjectively chilled, not appealing Captain Azim's disciplinary decision in fear of further retaliation and not filing any more grievances about the Old Jail's conditions despite them being "squalid and inhumane." *Id.* He only filed a single additional grievance for the sole purpose of exhausting administrative remedies so that he could file this case. *Id.* The loss of income, the forced separation from coworkers and friends, and the character assassination perpetrated by Defendants left Lu in emotional distress, suffering from depression and anxiety and requiring mental health intervention. *Id.*

A number of staff members told Lu that Defendants had retaliated against him for filing grievances. One told him that he heard he was "set up" in reference to the false contraband charge. A-34. Two others told him he was an "idiot" for handing Captain Hermans a grievance. *Id.* Another suggested that he "write to Captain Hermans" and tell him that he had "learned [his] lesson." *Id.* When Lu asked three different staff members when he could return to work, they told him it would be "up to Captain Hermans." *Id.* A different captain told Lu he was unlikely to get another job because he had "pissed off the wrong captain," referring to Captain Hermans. *Id.*

Lu filed a *pro se* complaint alleging First Amendment retaliation. A-25. Defendants moved to dismiss and the district court granted the motion, mostly with

prejudice but partially without prejudice. A-22. Rather than amending his complaint, Lu moved for reconsideration, which the district court denied. A-41. Rather than amending or waiting for the court's dismissal without prejudice to convert into dismissal with prejudice, Lu wrote to the court and requested entry of a final judgment. A-47. The court did as he asked. A-9. Lu timely appealed. A-8.

## STANDARD OF REVIEW

This Court reviews decisions granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) de novo. *See, e.g.*, *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009). In so doing, this Court must "assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Id.* at 88 (internal citations and quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## SUMMARY OF ARGUMENT

Lu stated a claim under the First Amendment for retaliation. Prison grievances are protected conduct. The litany of consequences he faced—including twenty days in solitary confinement, transfer, loss of jobs and income, a damaged reputation, and more—total to an adverse action. And there is both circumstantial and direct

8

evidence that Defendants performed the adverse actions to retaliate for Lu filing grievances.

Without analyzing the elements of a retaliation claim, the district court erred in ruling for Defendants. First, the court dismissed Lu's allegations as "conclusory," seemingly because he pled two allegations "under information and belief." This Court explicitly permits such pleading under certain circumstances, however, and those are met here. The court also ruled for Defendants because their conduct was not independently unconstitutional. Plaintiffs bringing retaliation claims, however, do not need to demonstrate that an action is independently unconstitutional to be an adverse action when done out of retaliation for protected conduct. Finally, the court held that Lu could not bring a claim regarding fabricated contraband charges because he admitted to possessing drugs. He did not. In fact, he did not admit to possessing contraband of any kind, and the court's conclusion that Defendants would have taken the actions they did absent a retaliatory motive require inferences in Defendants' favor and ones that strain credulity. This Court should reverse and remand for discovery.

## ARGUMENT

### I.    Lu's Allegations State a Claim for First Amendment Retaliation.

A First Amendment retaliation claim has three elements: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against

9

the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal citations and quotations omitted).

### a) Protected conduct

The first prong does not merit significant attention. Lu alleges that he was punished for filing jail grievances. A-30. This Court has long "held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).

### b) Adverse action

Defendants' conduct towards Lu qualifies as an "adverse action." An action is adverse when it would deter "a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotations omitted). Because the analysis proceeds through an objective lens, it is immaterial that "a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004).[5] In evaluating "adverse action,"

---

[5] Lu alleges that he was, in fact, deterred from filing additional grievances and so were his fellow prisoners, so much so that the overall number of grievances from his housing unit "sharply decreased." A-31. While these allegations are unnecessary to (continued…)

this Court must consider the totality of "the specific circumstances in which retaliation claims arise." *Hayes v. Dahlke*, 976 F.3d 259, 272 (2d Cir. 2020). As a result, when a retaliation claim is based on a course of conduct instead of a single action, this Court analyzes the actions together to determine whether they collectively constitute adverse action. *Walker v. Senecal*, 130 F.4th 291, 302 (2d Cir. 2025) (holding that "the district court erred in failing to consider the aggregate deterrent effect of [defendant's] purported conduct in assessing whether an adverse action occurred").

The retaliatory actions against Lu clearly constitute an adverse action when taken cumulatively. Defendants' actions resulted in him being convicted of a false misconduct report; being sent to solitary confinement for twenty days; permanently losing highly paid jobs; transferring from desirable housing to a unit "notorious for its harsh conditions"; and being saddled with a reputation for drug smuggling that ruined his reputation in jail and even came up in his criminal proceedings. A-29– 31.

In *Gill v. Pidlypchak*, this Court held that "the filing of false misbehavior reports against [Plaintiff] and his sentence of three weeks in keeplock" constituted an adverse action. 389 F.3d 379, 384 (2d Cir. 2004). Omitting the many other consequences Lu experienced, he alleged the identical retaliation here. A-30–31. In

---

state a claim as the test is objective, their behavior further demonstrates the plausibility that "a similarly situated individual of ordinary firmness" would be deterred "from exercising his or her constitutional rights." *Goord*, 320 F.3d at 353.

some of this Court's other cases involving analogous retaliation, the parties did not even dispute that the conduct constituted an adverse action but instead took it as given and disputed other issues, such as causation. In *Gayle v. Gonyea*, for instance, this Court ruled for a prisoner who alleged that prison officials retaliated against him by "charging him with a false misbehavior report and punishing him with keeplock confinement in retaliation for his exercise of his constitutional right to file a grievance." 313 F.3d 677, 682 (2d Cir. 2002). In *Bennett v. Goord*, this Court ruled for a prisoner who alleged that prison officials transferred him and filed false disciplinary charges as retaliation. 343 F.3d 133, 138 (2d Cir. 2003). In *Colon v. Coughlin*, this Court ruled for a prisoner alleging retaliation in the form of a false disciplinary charge of possessing contraband and a resulting transfer of housing units. 58 F.3d 865, 868 (2d Cir. 1995).

Some of the other consequences of Defendants' actions may constitute an adverse action standing on their own, such as Lu's firing from a high-paying job. A-27, A-32. While this Court has never had occasion to opine on whether the loss of a desirable job, standing alone, constitutes an adverse action, other courts have held that it is. The Seventh Circuit did so in *DeWalt v. Carter*. 224 F.3d 607, 612 (7th Cir. 2000), abrogated on other grounds *by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020). In *Siggers-El v. Barlow*, a prisoner losing a high-paying prison job as the result of a retaliatory transfer was critical to the Sixth Circuit's conclusion that the

defendants' actions were "adverse." 412 F.3d 693, 702 (6th Cir. 2005). In *Gomez v. Vernon*, the Ninth Circuit held that defendants who threatened a prisoner with transferring him until he quit his law library job violated the First Amendment. 255 F.3d 1118, 1127 (9th Cir. 2001). This Court does not need to reach the question of whether losing his jobs, on its own, would constitute an adverse action for Lu, but given the unusual pay and benefits it is certainly possible. Regardless, Defendants' behavior taken cumulatively certain qualifies.

c) *Causation*

This Court in *Colon v. Coughlin* explained the causation standard in prison retaliation cases. 58 F.3d 865, 872 (2d Cir. 1995). First, there is circumstantial evidence. *Colon* cited "temporal proximity" between the protected speech and the adverse action as well as "evidence of prior good behavior" when a prisoner is accused of misconduct. *Id.* There may also be "direct evidence," such as a staff member explicitly stating that there was a retaliatory scheme. *Id.*

Lu alleges each of these types of evidence. He handed in a grievance to Captain Hermans about strip searches on the evening of September 21, 2023. A-28. His cell was tossed and he was given fabricated misconduct charges less than twelve hours later. A-28–29. This Court has held regarding much longer periods that a "short time frame between the grievance and [an adverse action that] supports an inference that defendants had a retaliatory motive." *Morales v. Mackalm*, 278 F.3d

13

126, 131 (2d Cir. 2002) (describing a period of several weeks as such); *see also Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (holding that "the passage of only six months" established temporal proximity). Lu also had evidence of prior good behavior—his disciplinary record was "spotless" and he had been a trustee for nearly two years before suddenly receiving charges for possessing contraband and disorderly conduct. A-30. There is other circumstantial evidence, such as that his punishment was a disproportionate one typically used for detainees who committed or threatened violence. A-33. In addition, when Lu grieved the strip searches, the purported justification misdescribed the basic chronology of events, suggesting pretext. A-32.

Most importantly, there was ample direct evidence. At the outset of Lu's disciplinary hearing, Captain Azim told him that he could "see why [his] cell got searched," a reference to the filing of his grievance. A-30. Officer A.G. told Lu that he had heard he was "set up." A-34. Two officers, J.A. and C.C., said that he was an "idiot" for handing Captain Hermans a grievance. *Id.* Officer I.A. suggested that he write to Captain Hermans and tell him that he had "learned [his] lesson." *Id.* Several staff members told him that it would be "up to Captain Hermans" if he was allowed to work again, even though jail policy allowed him to work after thirty days. *Id.* Captain J.A. told Lu that he would likely not get another job because he had "pissed off the wrong captain," another reference to the grievance against Captain Hermans.

14

*Id.* Lu's allegations are far more compelling than the evidence that got the plaintiff in *Colon* past summary judgment—a single statement from a staff member that a cell search was "in retaliation for" protected conduct. 58 F.3d at 868, 873.

**II.    The District Court Erred in Dismissing Lu's Claims for First Amendment Retaliation.**

Although the district court recited the elements of a First Amendment retaliation claim, it did not analyze how they applied to Lu's claim. A-17–18. Instead, the district court dismissed his complaint for three other reasons. The court erred.

a) *The district court erred in discarding Lu's allegations as conclusory merely because two were pled "Upon Information and Belief."*

The district court's "first and foremost" reason for dismissing Lu's retaliation claim was that the complaint "relies almost exclusively on conclusory statements and legal conclusions lacking in factual support." A-16. The district court cited to no cases or legal principles in this section and did not give any examples of "legal conclusions lacking in factual support." *Id.* It is unclear what the court could have been referring to there.

The court did give four examples of purportedly "conclusory statements," two about Captain Hermans and two about Captain Azim. *Id.* The court criticized Lu's allegations that "on information and belief" Captain Hermans ordered Lu's cell be searched and that "on information and belief" Captain Hermans ordered his

15

subordinates to fabricate the contraband and to create a misbehavior report. *Id.*[6] It likewise faulted Lu's allegations that Captain Azim was predisposed to retaliating against grievance filers and that Captain Azim was incentivized to prevent meritorious inmate complaints from being appealed, both because of a conflict of interest. *Id.*

The court dismissed the first two allegations as "pure conjecture" only because of Lu's inclusion of the phrase "on information and belief." *Id.* This Court, however, has squarely and repeatedly rejected the premise that an allegation made on information and belief is conclusory on that basis.

The district court was correct that the U.S. Supreme Court has recalibrated the pleading standard to require factual allegations that "raise a right to relief above the speculative level"—that is, to bar reliance on pure conjecture. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This Court has explicitly held, however, that "[t]he *Twombly* plausibility standard … does not prevent a plaintiff from 'pleading facts alleged "upon information and belief"' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability

---

[6] In describing Lu's "conclusory" allegations, the district court cited to paragraph 21 of the complaint but must have been referring to paragraph 26. *See* A-29–30.

16

plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted). Far from signaling speculation, the device is "a desirable and essential expedient" when the facts needed to complete a claim lie outside the plaintiff's personal knowledge. *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed. 2004)).

*Boykin* is directly on point and controls. There, as here, the district court faulted a *pro se* plaintiff because her claims about racial discrimination in housing were "premised upon information and belief." *Id.* The plaintiff's claims were far more speculative than Lu's—she alleged that borrowers who were not members of protected classes received more favorable loans than those who were without citing a single example of that occurring. *Id.* This Court nonetheless reversed, holding that "the district court improperly faulted [Plaintiff] for pleading facts alleged 'upon information and belief,'" because the information she lacked was "particularly within [the defendant's] knowledge and control." *Id.* The same holds here. Whether Captain Hermans ordered the cell search and directed subordinates to manufacture the misbehavior report are private facts that only Defendants could know. Lu cannot have firsthand knowledge of who issued the order or the communication between staff. That is the paradigmatic circumstance in which information-and-belief pleading is not merely permitted but expected.

17

While Lu's allegations were adequate under this precedent, he pleaded far more than *Boykin* requires. He did not guess at Hermans's responsibility but instead alleged a series of concrete facts pointing to that clear conclusion. Hermans was the shift supervisor the morning of the search. A-29. When Lu received the misbehavior report, Sergeant S.B. told him the matter was "above her pay grade" and that she was just "following orders." A-30. Lu's suspension, eviction from his preferred housing unit, and transfer were carried out "by order of Captain Hermans." *Id.* After the fact, numerous staff members referenced the incident as retaliation by Captain Hermans. A-34. The only facts that Lu supplied "on information and belief" were that Hermans had in fact ordered the misconduct. These are precisely the details that Lu could not independently verify but that Defendants can.

Lu's allegations were also independently acceptable because they were "based on factual information that makes the inference of culpability plausible." *Arista Records*, 604 F.3d at 120. Lu's information and belief were anchored in a detailed factual chronology, not asserted in a vacuum. Lu filed three grievances over three days challenging nightly strip searches; he handed the Third Grievance directly to Captain Hermans; the very next morning officers shook down his cell, scattering his legal papers and damaging family photos; Sergeant S.B. then returned the Third Grievance, saying that Hermans would not accept it; then within forty-five minutes of Lu's resubmitting the grievance fixing the purported error, he received a

18

fraudulent misbehavior report. A-28–30. At the disciplinary hearing, Captain Azim opened by remarking, "I see why your cell got searched," tying the search to the grievance. A-30. Then staff members told Lu that he had been "set up" or had "pissed off the wrong captain," identifying Hermans. A-33. Lu's allegations are the antithesis of conjecture.

The court's treatment of Lu's two allegations concerning Captain Azim fares no better. The court dismissed as conjecture Lu's allegations that Azim was "predisposed to retaliating against grievance filers due to his conflicting responsibilities" and that he was "incentivized to prevent meritorious inmate complaints from reaching" the State Commission of Correction. A-16. These allegations are not speculating as to anything. They are specific structural facts about a conflict of interest and predisposition that Azim had. Azim simultaneously served as the jail's Disciplinary Hearing Officer—the official who adjudicated the charges against Lu—and as its Grievance Coordinator, responsible for liaising with a higher, reviewing entity and therefore institutionally invested in keeping detainee grievances from reaching that body. A-33. That an official with a direct conflict of interest has warped incentives is not conjecture, and that he might act on them is the ordinary inference that a pleaded conflict of interest invites. That inference rests on a principle long embedded in the law: a decisionmaker with a direct, personal stake in the outcome is not presumed neutral. *See Withrow v. Larkin*, 421 U.S. 35, 47

19

(1975). While in the context of procedural due process challenges, not at issue here, this Court has explained that "an inmate subject to a disciplinary hearing is entitled to an impartial hearing officer" for the exact reasons that Lu invoked. *See Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996). Nor does the conflict stand alone: at the outset of the hearing, Azim remarked, "I see why your cell got searched," a direct reference to the grievance Lu had just filed. A-30. The allegation of a conflict of interest is not necessary or even particularly important to Lu's allegations but merely buttresses Azim's direct admission of a retaliatory scheme. *Cf. Colon*, 58 F.3d at 872–73 (retaliation claim supported by circumstantial evidence combined with a defendant's admission of a retaliatory scheme).

The court's ruling also cannot be reconciled with the standard of review it recited. The court acknowledged its duty to accept Lu's well-pleaded allegations as true, draw all reasonable inferences in his favor, and construe the *pro se* complaint liberally "to raise the strongest arguments that it suggests." A-13–14. (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). The dismissal of information-and-belief allegations as "conjecture" did the reverse: it drew every inference against the pleader and penalized him for not pleading facts he could not yet possess. The court's dismissal of a plain conflict-of-interest as speculation similarly required making inferences against Lu.

The district court's final error in this paragraph was projecting the purported errors in these four allegations to the rest of Lu's complaint. As described in detail *supra* in Section I, Lu's allegations are clear and detailed. They are plainly enough to state a claim by a pro se plaintiff. Even were the court's critiques of 18, 26, 44, and 45 valid, there is no basis to dismiss the complaint as a whole as "amount[ing] to nothing more than conjecture." A-17.

b) *Government conduct can be an adverse action even if otherwise constitutional.*

The district court also dismissed Lu's retaliation claim because the harassing searches did not independently violate the constitution. A-17. Although some searches could conceivably violate the Fourth or Eighth Amendments, the court wrote, these random searches did not violate either. A-17–18. That alone was sufficient to conclude that Lu's "retaliation claims premised on alleged impermissible searches must be dismissed with prejudice without leave to replead in the future." A-18. The court did not cite any First Amendment retaliation case law to justify its conclusion.

The district erred in holding that Lu could not bring a First Amendment retaliation claim based on searches just because the searches did not independently violate the constitution. "[A]n act in retaliation for the exercise of a constitutional right is actionable under [s]ection 1983 even if the act, when taken for different reasons, would have been proper." *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir.

1988). This point is fundamental to First Amendment retaliation claims: "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). "[I]f the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited," no matter the independent legal right (or not) to the benefit. *Id.* In *Franco*, this Court noted that the filing of false disciplinary charges in prison did not inherently violate the Constitution but did in that case if proven that defendants did so out of retaliation for protected conduct. 854 F.2d at 589–91. In *Gill v. Pidlypchak*, a near-identical allegation of false disciplinary charges and three weeks in "keeplock" constituted an adverse action even though such treatment on its own, again, would not violate the Eighth or Fourteenth Amendments. 389 F.3d 379, 384 (2d Cir. 2004).[7]

   c) *Lu did not admit to violating prison rules.*

---

[7] As described in Section I, the Seventh Circuit held in *DeWalt v. Carter* that a plaintiff alleged an adverse action when he alleged that he lost his job in retaliation for protected speech. 224 F.3d 607, 612 (7th Cir. 2000). *DeWalt* also rejected a procedural due process claim based on the firing, as the plaintiff had "no right to hold a particular prison job, or any job at all for that matter." *Id.* The two inquiries are different.

Finally, the district court held that Lu could not challenge the jail's punitive actions because "Plaintiff freely admits to the possessing the [sic] impermissible material (contraband) which resulted in a 20-day period of confinement." A-18. Lu could not argue that Hermans lied that Lu "possessed drugs" because "Plaintiff admitted to the possession." *Id.* Lu did not.

When Lu's cell was searched, staff wrote him up for "Disorderly Conduct" and for "Possession of Contraband." A-29. The purported contraband consisted of, first, "pens, highlighters, and a paper clip" and, second, a "Thanksgiving-themed sticker sheet" that had "tested positive" for a substance considered "contraband," presumably a controlled substance. *Id.* Lu admits that he possessed the stationery items but said he thought he was allowed to have them, as evidenced by the fact that past cell searches had never resulted in staff taking them. *Id.* He denied that the stickers contained contraband and offered to show the sergeant proof that they had come through the jail's mail room and thus already been tested negative for contraband. *Id.*[8] The sergeant responded that she was not interested in this exonerating evidence as she was "just following orders" and that the issue was

---

[8] Jail staff were accusing Lu (and ultimately convicting him) of possessing drugs. Jails regulate stickers because of the possibility of detainees using them to smuggle drugs. *See, e.g.*, *Banks v. Jesson*, No. 11-CV-1706, 2016 WL 3566207, at *8 (D. Minn. June 27, 2016). Captain Hermans told other staff members that Lu had in fact possessed drugs, which even made its way into Lu's criminal proceeding. A-31.

"above her pay grade." A-39. At the hearing, Captain Azim refused to consider his exonerating evidence and Lu was found guilty of all charges.

The court's conclusion that Lu had admitted to the charges that resulted in his punishment was wrong in several ways. First, Lu did not admit to possessing drugs. Indeed, he alleged that he had proof that he had not possessed drugs, which two different staff members explicitly ignored, one on the grounds that a higher-up had ordered him to be punished regardless of the truth. Lu also did not admit to possessing contraband of any kind. He admitted to possessing stationery but said that he believed it to not be contraband, and he had evidence that it was not. Nothing in the complaint demonstrates that the stationery was, in fact, contraband and the court's inference that possession of the stationery was against the rules was one in Defendants' favor, inappropriate on a motion to dismiss. Finally, even if Lu had admitted to possessing the stationery, the district court would still be wrong that this possession "resulted in a 20-day period of confinement." A-18. Lu was found guilty of possessing contraband (stationery); possessing contraband (drugs); and disorderly conduct (which had no supporting evidence and which the court entirely ignored). Staff punished him with twenty days in solitary confinement for these charges, an outsized punishment that was "typically reserved for serious infractions such as attacking another inmate or threatening a staff member." A-33. The inference that Defendants issued such a severe punishment because of stationery and not the

24

disorderly conduct or drugs is one in Defendants' favor and a bizarre one. The court only reached this conclusion in favor of Defendants by misreading Lu's complaint or making inferences in Defendants' favor. When analyzed appropriately, his complaint states a claim.

## CONCLUSION

This Court should reverse the dismissal of Lu's First Amendment retaliation claim and remand to the district court for further proceedings.

Dated:  June 22, 2026

Respectfully submitted,

*/s/ Samuel Weiss*

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW
FNT 1
#33821
Washington, DC 20033
(202) 455-4399

*Attorneys for Plaintiff-Appellant*

25

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 5,945 words, exclusive of the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). The undersigned further certifies that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman and 14-point font.

Dated: June 22, 2026

*/s/ Samuel Weiss*
Samuel Weiss

*Attorney for Plaintiff-Appellant*

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d)(1)(B), I hereby certify that on June 22, 2026, I caused true and correct copies of the foregoing Brief of Plaintiff-Appellant and the Appendix thereto to be served on counsel of record, via filing on the Court's ACMS system, in accordance with Local Rule 25.1(h).

Dated: June 22, 2026

*/s/ Samuel Weiss*
Samuel Weiss

*Attorney for Plaintiff-Appellant*