# 25-3063-cv

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

---

JIANQIAO LU,
*Plaintiff-Appellant*,

v.

GEORGE HERMANS, SULAHUDDEEN AZIM, WESTCHESTER COUNTY,
*Defendants-Appellees*.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

**APPENDIX OF PLAINTIFF-APPELLANT**

---

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW FNT 1
#33821
Washington, DC 20033
(202) 455-4399

*Attorney for Plaintiff-Appellant*

## TABLE OF CONTENTS

**Page**

District Court Index………………………………………………..…App. 1

Notice of Appeal (Doc. No. 45)……………………………………..…App. 8

Judgment (Doc. No. 43)...……………………………………………App. 9

Opinion and Order (Doc. No. 29)………………………………………...App. 10

Complaint (Doc. No.1)…………………………..…………………………App. 25

Opinion and Order (Doc. No. 40)…………………………….………..App. 41

Request for Entry of Final Judgment (Doc. No. 41)………………….....App. 47

Request for Entry of Final Judgment Memo Endorsed (Doc. No. 37)…..…..App. 49

Memo Endorsement (Doc. No. 42)……………………….………...App. 51

Query    Reports    Utilities    Help    Log Out

CLOSED,APPEAL,ECF,PRO-SE

# U.S. District Court
## Southern District of New York (White Plains)
## CIVIL DOCKET FOR CASE #: 7:24-cv-01023-NSR

Lu v. Hermans et al
Assigned to: Judge Nelson Stephen Roman
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 02/12/2024
Date Terminated: 12/03/2025
Jury Demand: Plaintiff
Nature of Suit: 555 Prisoner: Prison Condition
Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 02/12/2024 | 1 | COMPLAINT against Sulahuddeen Azim, George Hermans, Westchester County. Document filed by Jianqiao Lu. (sac) (Entered: 02/12/2024) |
| 02/12/2024 | 2 | REQUEST TO PROCEED IN FORMA PAUPERIS. Document filed by Jianqiao Lu. (sac) (Entered: 02/12/2024) |
| 02/12/2024 | 3 | PRISONER AUTHORIZATION. Document filed by Jianqiao Lu. (sac) (Entered: 02/12/2024) |
| 02/12/2024 | | Case Designated ECF. (sac) (Entered: 02/12/2024) |
| 02/13/2024 | | NOTICE OF CASE REASSIGNMENT - SUA SPONTE to Judge Laura Taylor Swain. Judge Unassigned is no longer assigned to the case. (vba) (Entered: 02/13/2024) |
| 02/14/2024 | 4 | ORDER DIRECTING ORIGINAL SIGNATURE: Plaintiff is directed to submit a signed signature page of the complaint, IFP application, and prisoner authorization to this Court's *Pro Se* Office within thirty (30) days of the date of this Order. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). Signature Page due by 3/15/2024. (Signed by Judge Laura Taylor Swain on 1/14/2024) (Attachments: # 1 Exhibit complaint signature page, # 2 Exhibit IFP application signature page, # 3 Exhibit prisoner authorization signature page) (asg) (Entered: 02/14/2024) |
| 02/15/2024 | | MAILING RECEIPT: Document No: 4. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (vn) (Entered: 02/15/2024) |
| 02/22/2024 | 5 | Original Signature Received from J. Lu re: 1 Complaint. (sc) (Entered: 02/26/2024) |
| 02/27/2024 | 6 | ORDER GRANTING IFP APPLICATION IN PRISONER CASE: The Clerk of Court is directed to send a copy of this order and the prisoner authorization to the agency having custody of Plaintiff. That agency is directed to forward copies of Plaintiff's prison trust fund account for the past six months and to disburse the payments required under 28 U.S.C. § 1915 to the United States District Court for the Southern District of New York and to include the above docket number on the disbursement before sending it to the Court. If Plaintiff is transferred to another facility, the current facility shall provide a copy of this order to the facility to which Plaintiff is transferred. Finally, it is Plaintiff's obligation to |

A. 1

| | | |
|---|---|---|
| | | promptly submit a written notification to the Court if Plaintiff's address changes, and the Court may dismiss the action if Plaintiff fails to do so. (Signed by Judge Laura Taylor Swain on 2/27/2024) (vn) (Entered: 02/28/2024) |
| 02/29/2024 | | MAILING RECEIPT: Document No: 6. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (nb) (Entered: 02/29/2024) |
| 03/07/2024 | | NOTICE OF CASE REASSIGNMENT to Judge Nelson Stephen Roman. Judge Laura Taylor Swain is no longer assigned to the case. (vba) (Entered: 03/07/2024) |
| 03/07/2024 | | Magistrate Judge Victoria Reznik is designated to handle matters that may be referred in this case. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (vba) (Entered: 03/07/2024) |
| 03/12/2024 | 8 | ORDER OF SERVICE: The Clerk of Court is instructed to issue summonses for George Hermans, Sulahuddeen Azim, and Westchester County, complete the USM-285 forms with the addresses for these defendants, and deliver all documents necessary to effect service to the U.S. Marshals Service. The Clerk of Court is also instructed to mail Plaintiff an information package. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. Cf. Coppedge v. United States, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue). SO ORDERED. (Signed by Judge Nelson Stephen Roman on 3/12/2024) (vfr) Transmission to Pro Se Assistants for processing. (Entered: 03/12/2024) |
| 03/13/2024 | | MAILING RECEIPT: Document No: 8. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (kwi) (Entered: 03/13/2024) |
| 03/15/2024 | 9 | SUMMONS ISSUED as to Sulahuddeen Azim, George Hermans, Westchester County. (nb) (Entered: 03/15/2024) |
| 03/15/2024 | | FRCP 4 SERVICE PACKAGE DELIVERED TO U.S.M.: on 3/15/2024 Re: Judge Nelson Stephen Roman 8 Order of Service. The following document(s) were enclosed in the Service Package: Complaint, Summons, IFP, Order of Service, Completed U.S.M. form(s) for defendant(s)Sulahuddeen Azim, George Hermans, Westchester County. (nb) (Entered: 03/15/2024) |
| 03/15/2024 | 10 | INFORMATION PACKAGE MAILED to Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010, at, on 3/15/2024 Re: 8 Order of Service. The following document(s) were enclosed in the Service Package: a copy of the order of service or order to answer and other orders entered to date, the individual practices of the district judge and magistrate judge assigned to your case, Instructions for Litigants Who Do Not Have Attorneys, Notice Regarding Privacy and Public Access to Electronic Case Files, a Motions guide, a notice that the Pro Se Manual has been discontinued, a Notice of Change of Address form to use if your contact information changes, a handout explaining matters handled by magistrate judges and consent form to complete if all parties agree to proceed for all purposes before the magistrate judge. (nb) (Entered: 03/15/2024) |
| 03/20/2024 | 11 | LETTER addressed to Judge Nelson Stephen Roman from Jianqiao Lu dated 3/19/2024 re: It is thus no longer necessary for the U.S. Marshals Service, which is experiencing a hefty backlog of unserved papers, to facilitate service in this case. Document filed by Jianqiao Lu..(rro) (Entered: 03/20/2024) |
| 04/03/2024 | 12 | NOTICE OF APPEARANCE by Robert P. Taglia on behalf of Westchester County. (Attachments: # 1 Affidavit Affidavit of Service).(Taglia, Robert) (Entered: 04/03/2024) |

A. 2

| | | |
|---|---|---|
| 04/04/2024 | 13 | FIRST LETTER MOTION for Extension of Time to File Answer *or Pre-Motion Letter* addressed to Judge Nelson Stephen Roman from Robert Taglia dated 04/04/2024. Document filed by Westchester County. Return Date set for 4/8/2024 at 09:30 AM..(Taglia, Robert) (Entered: 04/04/2024) |
| 04/05/2024 | 14 | ORDER granting 13 Letter Motion for Extension of Time to Answer re 13 FIRST LETTER MOTION for Extension of Time to File Answer *or Pre-Motion Letter* addressed to Judge Nelson Stephen Roman from Robert Taglia dated 04/04/2024., 1 Complaint. The Court GRANTS County Defendants' extension request. County Defendants are directed to file an answer or otherwise respond to Plaintiff's complaint by April 15, 2024. The Clerk of Court is kindly directed to terminate the motion at ECF No. 13. Sulahuddeen Azim answer due 4/15/2024; George Hermans answer due 4/15/2024; Westchester County answer due 4/15/2024. (Signed by Judge Nelson Stephen Roman on 4/5/2024) (ate) (Entered: 04/05/2024) |
| 04/08/2024 | | MAILING RECEIPT: Document No: 14. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (sha) (Entered: 04/08/2024) |
| 04/15/2024 | 15 | FIRST LETTER MOTION for Conference *on Motion to Dismiss* addressed to Judge Nelson Stephen Roman from Robert Taglia dated 04/15/2024. Document filed by Sulahuddeen Azim, George Hermans, Westchester County..(Taglia, Robert) (Entered: 04/15/2024) |
| 04/17/2024 | 16 | LETTER addressed to Judge Nelson Stephen Roman from Jianqiao Lu dated 4/16/2024 re: I respectfully request an extension of time from April 18, 2024 until April 25, 2024 to respond to the pre-motion letter filed by Defendants on April 15, 2024, in the above-referenced case. Document filed by Jianqiao Lu. (mml) (Entered: 04/17/2024) |
| 04/18/2024 | 17 | MEMO ENDORSEMENT on re: 16 Letter, filed by Jianqiao Lu. ENDORSEMENT: The Court GRANTS Plaintiff's extension request. Plaintiff's response to Defendants' pre-motion letter is now due April 25, 2024. The Clerk of Court is kindly directed to mail a copy of this endorsement to pro se Plaintiff and show service on the docket. (Signed by Judge Nelson Stephen Roman on 4/18/2024) (ate) (Entered: 04/18/2024) |
| 04/19/2024 | | MAILING RECEIPT: Document No: 17. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (rdz) (Entered: 04/19/2024) |
| 04/23/2024 | 18 | LETTER addressed to Judge Nelson Stephen Roman from Jianqiao Lu dated 4/22/2024 re: I respectfully submit this response to Defendants' April 15, 2024 letter. Document filed by Jianqiao Lu..(kgo) (Entered: 04/23/2024) |
| 04/23/2024 | 19 | MARSHAL'S PROCESS RECEIPT AND RETURN OF SERVICE EXECUTED Summons and Complaint served. Westchester County served on 4/15/2024, answer due 5/6/2024. Service was accepted by Mary Lombardo. Document filed by Jianqiao Lu..(rro) (Entered: 04/24/2024) |
| 04/26/2024 | 20 | ORDER granting 15 Letter Motion for Conference re: 15 FIRST LETTER MOTION for Conference *on Motion to Dismiss* addressed to Judge Nelson Stephen Roman from Robert Taglia dated 04/15/2024. The Court waives the pre-motion conference requirement and grants Defendants leave to file a motion todismiss in accordance with the following briefing schedule:(1) Defendants' moving papers are to be served (not filed) on June 10, 2024(2) Plaintiff's opposition papers are to be served (not filed) on July 10, 2024; and(3) Defendants' reply papers are to be served on June 25, 2024.All motion papers are to be filed by Defendants on the reply date, June 25, 2024. The parties are directedto provide Chambers with two physical courtesy copies of their motion papers on the same date they areserved on opposing counsel. The Defendants are further directed to provide the Court with an electroniccourtesy copy of the motion papers as they are served per this Courts |

A. 3

| | | |
|---|---|---|
| | | local emergency civil rules.The Clerk of Court is respectfully directed to terminate the motion at ECF No. 15, mail a copy ofthis endorsement to pro se Plaintiff and file proof of service on the docket.. (Signed by Judge Nelson Stephen Roman on 4/26/2024) (jca) (Entered: 04/26/2024) |
| 04/26/2024 | | Set/Reset Deadlines: Motions due by 6/25/2024. Responses due by 6/25/2024 Replies due by 6/25/2024. (jca) (Entered: 04/26/2024) |
| 04/29/2024 | | MAILING RECEIPT: Document No: 20. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (sha) (Entered: 04/29/2024) |
| 06/12/2024 | 21 | LETTER addressed to Judge Nelson Stephen Roman from Jianqiao Lu dated 6/12/2024 re: I hereby waive any further response and rely on my April 22, 2024 letter (ECF 18) to oppose the motion. Document filed by Jianqiao Lu.(sgz) (Entered: 06/14/2024) |
| 07/16/2024 | 22 | FIRST MOTION to Dismiss . Document filed by Sulahuddeen Azim, George Hermans, Westchester County. Responses due by 7/10/2024 Return Date set for 7/25/2024 at 09:30 AM..(Taglia, Robert) (Entered: 07/16/2024) |
| 07/16/2024 | 23 | FIRST MEMORANDUM OF LAW in Support re: 22 FIRST MOTION to Dismiss . . Document filed by Sulahuddeen Azim, George Hermans, Westchester County..(Taglia, Robert) (Entered: 07/16/2024) |
| 07/16/2024 | 24 | DECLARATION of Robert Taglia in Support re: 22 FIRST MOTION to Dismiss .. Document filed by Sulahuddeen Azim, George Hermans, Westchester County..(Taglia, Robert) (Entered: 07/16/2024) |
| 07/16/2024 | 25 | NOTICE of Notice to Pro Se Litigant re: 22 FIRST MOTION to Dismiss .. Document filed by Sulahuddeen Azim, George Hermans, Westchester County..(Taglia, Robert) (Entered: 07/16/2024) |
| 07/16/2024 | 26 | RESPONSE in Support of Motion re: 22 FIRST MOTION to Dismiss . *Letter Lieu of Response*. Document filed by Sulahuddeen Azim, George Hermans, Westchester County.. (Taglia, Robert) (Entered: 07/16/2024) |
| 07/16/2024 | 27 | MARSHAL'S PROCESS RECEIPT AND RETURN OF SERVICE UNEXECUTED as to Sulahuddeen Azim. Attempted Service of Summons and Complaint. Service was attempted on 3/15/2024. Document filed by Jianqiao Lu. (nb) (Entered: 07/23/2024) |
| 07/16/2024 | 28 | MARSHAL'S PROCESS RECEIPT AND RETURN OF SERVICE UNEXECUTED as to George Hermans. Attempted Service of Summons and Complaint. Service was attempted on 3/15/2024. Document filed by Jianqiao Lu..(nb) (Entered: 08/01/2024) |
| 11/07/2024 | 29 | OPINION & ORDER re: 22 FIRST MOTION to Dismiss filed by Westchester County, George Hermans, Sulahuddeen Azim. Separately, the Court advises Plaintiff that he should strive towards producing an accessible, concise, and simple statement of his claims. At this point in the litigation, Plaintiff is not required to provide evidence to prove his claims, instead he should focus on including factual allegations in the complaint that allege plausible claims for relief. Recognizing the apparent challenges Plaintiff has faced collecting his exhibits and providing them all in one single filing, the Court will afford Plaintiff a longer than usual deadline. Accordingly, Plaintiff is directed to file his Amended Complaint on or before December 18, 2024. Should Plaintiff file an Amended Complaint, the Defendants are directed to answer or otherwise respond by January 15, 2025, and the parties are directed to confer, complete, and file a Case Management Plan and Scheduling Order (blank form attached) by February 19, 2025. If Plaintiff fails to timely file an Amended Complaint, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the |

A. 4

| | | |
|---|---|---|
| | | motion at ECF No. 22. SO ORDERED. (Amended Pleadings due by 12/18/2024.) (Signed by Judge Nelson Stephen Roman on 11/7/2024) (mml) (Entered: 11/07/2024) |
| 11/08/2024 | | MAILING RECEIPT: Document No: 29. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (Entered: 11/08/2024) |
| 11/19/2024 | 30 | LETTER MOTION to Reconsider re: 29 Memorandum & Opinion, Set Deadlines, addressed to Judge Nelson Stephen Roman from Jianqiao Lu dated 11/19/2024. Document filed by Jianqiao Lu. (tp) (Entered: 11/20/2024) |
| 11/22/2024 | 31 | FIRST MEMORANDUM OF LAW in Opposition re: 30 LETTER MOTION to Reopen re: 29 Memorandum & Opinion,,,,,, Set Deadlines,,,,, addressed to Judge Nelson Stephen Roman from Jianqiao Lu dated 11/19/2024. . Document filed by Westchester County.. (Taglia, Robert) (Entered: 11/22/2024) |
| 11/25/2024 | 32 | ORDER denying without prejudice to renewal 30 Letter Motion to Reopen. The Court DENIES pro se Plaintiff's letter motion to reconsider without prejudice to renew. The Court waives the Pre-Motion Conference and sets the following briefing schedule: pro se Pltf's motion shall be served (not filed) December 27, 2024; Defts' opposition shall be served (not filed) January 27, 2025; and Defts' reply shall be served February 10, 2025. Defts are directed to file all motion documents, including pro se Pltf's papers, on the reply date, February 10, 2025. Defts are directed to mail two physical copies and email an electronic copy to Chambers of both pro se Pltf's and Defts' motion documents as they are served. Clerk of Court is directed to mail a copy of this endorsement to pro se Pltf and show service. The Clerk of Court is kindly requested to terminate the motion at ECF No. 30. SO ORDERED. (Signed by Judge Nelson Stephen Roman on 11/25/2024) (mml) (Entered: 11/25/2024) |
| 11/25/2024 | | Set/Reset Deadlines: Motions due by 2/10/2025. Responses due by 2/10/2025 Replies due by 2/10/2025. (mml) (Entered: 11/25/2024) |
| 11/26/2024 | | MAILING RECEIPT: Document No: 32. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (ak) (Entered: 11/26/2024) |
| 12/02/2024 | 33 | LETTER addressed to Judge Roman dated 11/29/24 re: Letter (EMAIL). Document filed by Jianqiao Lu.(jw) (Entered: 12/02/2024) |
| 12/02/2024 | 34 | LETTER addressed to Judge Nelson Stephen Roman from Jianqiao Lu dated 11/29/2024 re: I therefore respectfully submit the accompanying reply, which completes briefing on the motion. Document filed by Jianqiao Lu.(jw) (Entered: 12/02/2024) |
| 12/03/2024 | 35 | LETTER addressed to Judge Nelson Stephen Roman from Jianqiao Lu dated 12/3/2024 re: I am the pro se, incarcerated Plaintiff in the above-referenced action. This is a second request that the Court vacate the briefing schedule at ECF 32 and reinstate the motion for reconsideration at ECF 30.. Document filed by Jianqiao Lu..(nd) (Entered: 12/03/2024) |
| 02/03/2025 | 36 | LETTER addressed to Judge Nelson Stephen Roman from Jianqiao Lu dated 2/3/2025 re: Request to vacate briefing schedule.. Document filed by Jianqiao Lu. (ar) (Entered: 02/04/2025) |
| 02/04/2025 | 37 | MEMO ENDORSEMENT on re: 36 Letter filed by Jianqiao Lu. ENDORSEMENT: The Court DENIES pro se Plaintiff's request to vacate the briefing schedule at ECF No. 32. Pro se Plaintiff failed to adhere to this Court's individual rules by not seeking leave to file a Motion for Reconsideration. As a result, this Court denied pro se Plaintiff's Motion for Reconsideration at ECF No. 30, waived the pre-motion conference, and set a briefing schedule to ensure that the parties were both given proper notice and time to prepare materials. Notwithstanding, the Court has received the necessary supporting materials to consider pro se Plaintiff's Motion for Reconsideration at ECF No. 30 fully briefed and will |

A. 5

| | | |
|---|---|---|
| | | issue an opinion in due time. The Clerk of Court is respectfully directed to mail a copy of this endorsement to pro se Plaintiff and show service on the docket. SO ORDERED. (Signed by Judge Nelson Stephen Roman on 2/4/2025) (mml) (Entered: 02/04/2025) |
| 02/05/2025 | | MAILING RECEIPT: Document No: 37. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (ne) (Entered: 02/05/2025) |
| 03/06/2025 | 38 | LETTER addressed to Judge Nelson Stephen Roman from Jianqiao Lu dated 3/6/2025 re: I am the pro se, incarcerated Plaintiff in the above-referenced action. I respectfully submit this letter to bring to the Courts attention recently published authority that may be instructive in deciding my pending motion for reconsideration. Document filed by Jianqiao Lu. (jjc) (Entered: 03/07/2025) |
| 11/21/2025 | 39 | LETTER addressed to Judge Nelson Stephen Roman from Jianqiao Lu dated 11/21/2025 re: I am the *pro se*, incarcerated Plaintiff in the above-referenced action. I respectfully submit this letter to request a status update on my pending motion for reconsideration, which has now been fully briefed and under submission for nearly 12 months. (See generally ECF 30-37.) as further set forth herein. Document filed by Jianqiao Lu. (tp) (Entered: 11/25/2025) |
| 11/25/2025 | 40 | OPINION & ORDER: Plaintiff fails to satisfy any of the three avenues through which a party can successfully argue a motion for reconsideration. The Court therefore DENIES Plaintiff's motion for reconsideration without prejudice. Given that Plaintiff voluntarily withdraws his Monell claims, the Court dismisses all claims against Defendant Westchester County with prejudice. The Clerk of Court is kindly directed to mail a copy of this Order to pro se Plaintiff at the address listed on ECF and to show service on the docket. The Clerk of Court is also kindly directed to terminate the motion. SO ORDERED. Westchester County terminated. (Signed by Judge Nelson Stephen Roman on 11/25/2025) (mml) (Entered: 11/25/2025) |
| 11/26/2025 | | MAILING RECEIPT: Document No: 40. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (tro) (Entered: 11/26/2025) |
| 11/26/2025 | 41 | LETTER addressed to Judge Nelson Stephen Roman from Jianqiao Lu dated 11/26/2025 re: Request for Entry of Final Judgment. Document filed by Jianqiao Lu. (jjc) (Entered: 12/01/2025) |
| 12/02/2025 | 42 | MEMO ENDORSEMENT on re: 41 Letter filed by Jianqiao Lu. ENDORSEMENT: The Court is in receipt of pro se Plaintiff's letter, dated November 26, 2025, voluntarily dismissing his Complaint. (ECF No. 41.) The Court GRANTS Plaintiff's motion and dismisses his Complaint with prejudice. The Clerk of Court is kindly directed to enter judgment in favor of Defendants George Hermans and Sulahuddeen Azim and close this case. The Clerk of Court is also kindly directed to mail a copy of this endorsement to pro se Plaintiff at the address listed on ECF and to show service on the docket. SO ORDERED. (Signed by Judge Nelson Stephen Roman on 12/2/2025) (mml) Transmission to Orders and Judgments Clerk for processing. (Entered: 12/02/2025) |
| 12/03/2025 | | MAILING RECEIPT: Document No: 42. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (tro) (Entered: 12/03/2025) |
| 12/03/2025 | 43 | CLERK'S JUDGMENT re: 42 Memo Endorsement in favor of George Hermans, Sulahuddeen Azim against Jianqiao Lu. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Memo Endorsed Order dated December 2, 2025, the Court is in receipt of pro se Plaintiff's letter, dated November 26, 2025, voluntarily dismissing his Complaint. (ECF No. 41.) The Court has GRANTED Plaintiff's motion and has dismissed his Complaint with prejudice. Judgment is entered in favor of Defendants George Hermans and Sulahuddeen Azim; accordingly, the case is |

A. 6

| | | |
|---|---|---|
| | | closed. (Signed by Clerk of Court Tammi M Hellwig on 12/3/2025) (Attachments: # 1 Appeal Package) (km) (Entered: 12/03/2025) |
| 12/04/2025 | 44 | MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL. Document filed by Jianqiao Lu. (vfr) (Entered: 12/04/2025) |
| 12/04/2025 | 45 | NOTICE OF APPEAL from 37 Memo Endorsement 42 Memo Endorsement 40 Memorandum & Opinion 43 Clerk's Judgment 29 Memorandum & Opinion. Document filed by Jianqiao Lu. Form D-P is due within 14 days to the Court of Appeals, Second Circuit.(km) (Entered: 12/04/2025) |
| 12/04/2025 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 45 Notice of Appeal.(km) (Entered: 12/04/2025) |
| 12/04/2025 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 45 Notice of Appeal, filed by Jianqiao Lu were transmitted to the U.S. Court of Appeals.(km) (Entered: 12/04/2025) |
| 12/04/2025 | | MAILING RECEIPT: Document No: 43. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (ne) (Entered: 12/04/2025) |
| 12/05/2025 | 46 | NOTICE OF PENDING MOTION TO PROCEED IN FORMA PAUPERIS re: 45 Notice of Appeal. An appeal in the above-referenced case has been docketed in the Court of Appeals. According to the district court docket sheet or other available information, appellant has moved for leave to proceed in forma pauperis in district court on December 4, 2025 and that motion is pending. The appeal may not move forward until the motion is determined. Please direct the motion to the appropriate judge for determination. Upon the grant or denial of the motion, please enter the order and transmit it to the Court of Appeals. (km) (Entered: 12/05/2025) |
| 12/08/2025 | 47 | ***SELECTED PARTIES*** ORDER GRANTING IFP APPLICATION: Access to this Order is restricted to Case Participants, court personnel, and public terminals. The Clerk of Court is kindly directed to mail a copy of this Order to pro se Plaintiff at the address listed on ECF and to show service on the docket. The Clerk of Court is also kindly directed to transmit this Order to the United States Court of Appeals for the Second Circuit. SO ORDERED. (Signed by Judge Nelson Stephen Roman on 12/8/2025) (vfr) Transmission to Appeals Clerk. (Entered: 12/08/2025) |
| 12/09/2025 | | First Supplemental ROA Sent to USCA (Electronic File). Certified Supplemental Indexed record on Appeal Electronic Files for 47 Order Granting IFP Application in Prisoner Case,, 46 Notice (Other), USCA Case Number 25-3063, were transmitted to the U.S. Court of Appeals. (tp) (Entered: 12/09/2025) |
| 12/09/2025 | | MAILING RECEIPT: Document No: 47. Mailed to: Jianqiao Lu #265008 WCDOC P.O. Box 10 Valhalla, NY 10595-0010. (nb) (Entered: 12/09/2025) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/18/2026 12:34:36 | | |
| **PACER Login:** | rightsbehindbars | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 7:24-cv-01023-NSR |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

A. 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIANQIAO LU,

                 Plaintiff,

          v.

GEORGE HERMANS, SULAHUDDEEN
AZIM, and WESTCHESTER COUNTY,

              Defendants.

**NOTICE OF APPEAL**

No. 24-CV-1023 (NSR)

Notice is hereby given that Jianqiao Lu, *pro se* Plaintiff in the above-named case, appeals to the United States Court of Appeals for the Second Circuit from:

- The final judgment entered in this case on December 3, 2025;

- The December 2, 2025 Memo Endorsement dismissing the complaint;

- The November 25, 2025 Opinion and Order denying motion for reconsideration;

- The February 4, 2025 Memo Endorsement declining to vacate briefing schedule;

- The November 7, 2024 Opinion and Order dismissing the complaint.

DATED:    December 4, 2025
             Valhalla, New York

                                      
Jianqiao Lu
WCDOC #265008
PO Box 10
Valhalla, NY 10595-0010
lu@luvhermans.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
JIANQIAO LU,

     Plaintiff,

   -against-          24 **CIVIL** 1023 (NSR)

                 **JUDGMENT**

GEORGE HERMANS, SULAHUDDEN AZIM,
and WETSHCESTER COUNTY,

     Defendants.
-----------------------------------------------------------------X

   It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Memo Endorsed Order dated December 2, 2025, the Court is in receipt of

pro se Plaintiff's letter, dated November 26, 2025, voluntarily dismissing his Complaint. (ECF

No. 41.) The Court has GRANTED Plaintiff's motion and has dismissed his Complaint with

prejudice. Judgment is entered in favor of Defendants George Hermans and Sulahuddeen Azim;

accordingly, the case is closed.

**Dated:** New York, New York

   December 3, 2025

              **TAMMI M. HELLWIG**
             _____
                **Clerk of Court**

        **BY:**   *K. mango*

             _____
                **Deputy Clerk**

A. 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JIANQIAO LU,

                    Plaintiff,

       -against-

GEORGE HERMANS,
SULAHUDDEEN AZIM &
WESTCHESTER COUNTY,

                    Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __11/7/2024_____

No. 24-cv-01023 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge,

Plaintiff Jianqiao Lu ("Plaintiff"), proceeding *pro se* commenced the instant action on or about February 12, 2024, asserting claims pursuant to 42 USC 1983 ("Section 1983") sounding in alleged retaliation against Defendants Captain George Hermans  ("Captain Hermans") and Captain Sulahuddeen Azim ("Captain Azim") of the Westchester County Dept. of Corrections ("WCDC") and Westchester County (the "County") (collectively referred to as the "Defendants").  Presently before the Court is the Defendants' motion pursuant to Fed. Rule Civ. Proc. Law § 12(b)(6) ("Rule 12(b)(6)") seeking to dismiss Plaintiff's Complaint. For the following reasons, the motion is GRANTED.

## BACKGROUND

Plaintiff is a pre-trial detainee currently housed at the WCDC following his arraignment on criminal charges in New York State Supreme Court, Westchester County. On or about February 12, 2024, Plaintiff filed the action. (ECF No. 1.) On July 16, 2024, Defendants filed their motion to dismiss and supporting papers. (ECF No. 22 – 24.) Plaintiff filed is opposition to

A. 10

the motion on June 12, 2024.[1]  (ECF No. 18) Defendants did not file reply papers.

THE COMPLAINT

The allegations in the complaint are deemed true and liberally construed for the purpose of resolving Defendants motion to dismiss.

Since October 25, 2021, Plaintiff has been a detainee at WCDC awaiting trial in New York State Supreme Court on gun possession charges. Shortly thereafter his detention, Plaintiff applied and was approved for employment within WCDC as a "trustee," an inmate worker.  As a trustee, Plaintiff was moved to housing unit 4NW, which is located in the newest housing unit and reserved for trustees. Unit 4NW is colloquially referred to as the jail "penthouse" for its relatively comfortable conditions of confinement.

By September 23, 2023, Plaintiff was employed as a trustee in the Paint Crew, the Captain's Crew (the 11PM-7AM shift), the Sanitation Detail (the 3PM-11PM shift), and the 3-Core Law Library. The three jobs combined generated a weekly pay of $195.00. As a trustee, Plaintiff was also given access to meals and beverages which are not available to the general inmate population. Plaintiff valued these perks at approximately $140.00 a week.

On the night of September 18, 2023, while performing his duties as part of the Captain's Crew, Plaintiff was targeted for a strip search by Correctional Officer ("CO") C.B. CO C.B. informed Plaintiff that he was directed to strip search him on a daily basis "per departmental policy and procedure." A copy of the policy was not presented to Plaintiff.  The search resulted

---

[1] Plaintiff requested that his letter dated April 22, 2024, be deemed his opposition to the Defendants' motion to dismiss. (ECF No. 22.)

A. 11

in negative findings. Previously, Plaintiff had never been subjected to a strip search.

On September 19, 2023, following the initial search, Plaintiff filed a grievance (the "First Grievance"), challenging the propriety of the strip search. That same night, Plaintiff was strip searched again without reasonable suspicion. The next day, Plaintiff filed a second grievance (the "Second Grievance"). On September 20, 2023, Plaintiff was once again strip searched at night.  The following day, Plaintiff filed his third grievance (the "Third Grievance") to Captain Hermans concerning the strip searches.

On the morning of September 22, 2023, Plaintiff was awakened by several correctional officers who removed him from my cell while other officers conducted a search of his cell. The cell was left in state of disarray and several family photos were damaged. On information and belief, Captain Hermans, as Shift Commander, ordered the search of Plaintiff's cell. Soon thereafter, Sergeant S.B. arrived at Plaintiff's cell and returned the "Third Grievance" to Plaintiff informing him that Captain Hermans would not accept it because the form was not properly prepared. Plaintiff made the necessary corrections and resubmitted the form to Sergeant S.B. Immediately thereafter, Plaintiff was served with a misbehavior report charging him with disorderly conduct and possession of contraband.[2]

Plaintiff asserts upon information and belief, that Captain Hermans ordered his subordinates to fabricate the contraband charges and to fabricate the misbehavior report. Following the receipt of the misbehavior report, Plaintiff was suspended from his work assignments, removed from 4NWhousing unit, and transferred to the general population housing

---

[2] Plaintiff was purportedly charged with possession of pens, highlighters, and a paper clip which were discovered during the cell search. The report also claimed that Plaintiff was in possession of a Thanksgiving-themed sticker sheet which tested positive for a contraband substance.

area. For approximately a week, Plaintiff alleges that Captain Hermans embarked on a smear campaign to destroy Plaintiff's reputation which included false claims that Plaintiff possessed drugs.

On September 26, 2023, Plaintiff appeared before Captain Azim, then WCDC's Disciplinary Hearing Officer, for an administrative hearing to address the multiple disciplinary charges levied against him. At the hearing, Captain Azim, sustained all the charges, including possession of the contraband, and sentenced Plaintiff to 20 days of punitive confinement ("keeplock"). Plaintiff did not appeal Captain Azim's findings for fear of future retribution. Plaintiff further asserts that Captain Azim was incentivized to prevent meritorious inmate complaints from reaching the New York State Commission of Correction ("NYSCOC") and to present a rosy image of WCDC.

## RELEVANT LAW

### Rule 12(B)(6)

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); accord *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court

is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

"Where, as here, a plaintiff proceeds *pro se*, the court must 'construe [ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s].'" *Askew v. Lindsey*, No. 15-CV-7496 (KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (citing *Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013)). Yet, "the liberal treatment afforded to *pro se* litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)) (internal quotation marks omitted).

When determining a Rule 12(b)(6) motion, courts are generally confined to the "four corners of a complaint." *Perez v. Westchester Foreign Autos, Inc.*, No. 11-CV-6091, 2013 WL 749497, at *5 (S.D.N.Y. Feb. 28, 2013) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). As part of its review, courts are also entitled to consider documents attached to the complaint or incorporated in it by reference—i.e., documents "integral" to the complaint and that the complaint relied upon in bringing the suit. See *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000)).

**Section 1983**

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); see *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

### *First Amendment Retaliation*

In count one (1) of the Complaint, Plaintiff asserts a claim for First Amendment retaliation against Defendants Captain Hermans and Captain Azim. Courts generally approach prisoner retaliation claims "with skepticism and particular care," because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir.2001), overruled on other grounds by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992 (2002). See also *Phelps v. Kapnolas*,

308 F.3d 180, 187 n. 6 (2d Cir.2002). In order to survive a Rule 12(b)(6), a plaintiff asserting a First Amendment retaliation claim must allege the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes*, 239 F.3d at 492.  Much like all other civil claims brought in federal court, a plaintiff asserting a retaliation claim must comply with the requirements of Rule 12(b)(6).

Upon a review of the Complaint, liberally construing the allegations, and giving them every favorable inference, it is the Court's determination that Plaintiff has failed to assert a plausible claim on multiple grounds. The First Amendment retaliation claims are generally deemed dismissed without prejudice, except as to those claims premised on alleged impermissible searches, fabricated misbehavior report for possession of contraband and defamation, which are all dismissed with prejudice.

First and foremost, Plaintiff's relies almost exclusively on conclusory statements and legal conclusions lacking in factual support. The Complaint contains statements such as "on information and belief" Captain Hermans ordered that Plaintiff's cell be searched, "on information and belief" Captain Hermans ordered his subordinates to fabricate the contraband and to create a misbehavior report, "Captain Azim was predisposed to retaliating against grievance filers due to his [alleged] conflicting responsibilities," "Captain Azim was incentivized to prevent meritorious inmate complaints from reaching NYSCOC and Captain Azim's competing interest resulted in a vicious cycle of retaliation the discouraged WCDC residents from exercising their First Amendment." (Compl. paras. 18, 21, 44–45). Plaintiff's allegations amount to nothing more than conjecture.

As previously referenced, in order to assert a plausible First Amendment retaliation claim, a Plaintiff must allege, *inter alia*, an adverse action. *Dawes*, 239 F.3d at 492. An "[a]dverse action," defined objectively, is "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising ... constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir.2004) (quoting *Davis*, 320 F.3d at 353). "[I]n the context of prisoner retaliation suits, a prisoner need not demonstrate 'actual chill.' The issue is whether defendants engaged in retaliatory conduct that would 'deter a similarly situated individual of ordinary firmness from exercising his constitutional rights.'" *Lashley v. Wakefield,* 483 F.Supp.2d 297, 300 (W.D.N.Y.2007) (quoting *Gill*, 389 F.3d at 381).

Here, Plaintiff alleges that after filing each grievance, the Defendants conducted additional strip and cell searches, filed false misconduct charges against him, stripped him of his trustee designation (in turn depriving him of trustee benefits such as preferrable housing and a salary), defamed him and banned him from serving as a trustee in the future.

It is well settled that an inmate has no reasonable expectation of privacy in his prison cell entitling him to protection of unreasonable searches as prohibited under the Fourth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 104 S. Ct. 3194 (1984). To provide an inmate such a right is "fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. *Id.* at 527. Random searches of inmates, whether individually or collectively, as well as their cells and lockers are valid and necessary to ensure the safety and security of a prison and those within their walls. *Id.* at 529. An inmate or detainee does have recourse, however, for what may be acts of "calculated harassment" unrelated to institutional prison needs and may seek redress under the protections of the Eighth Amendment cruel and unusual punishments standard. *Id.* at 530. Accordingly,

Plaintiff's retaliation claims premised on alleged impermissible searches must be dismissed with prejudice without leave to replead in the future.

Following the search of Plaintiff's cell, WCDC personnel discovered contraband. Plaintiff alleges that the discovery was fabricated resulting in what amounts to trumped up charges. In his Complaint, however, Plaintiff freely admits to the possessing the impermissible material (contraband) which resulted in a 20-day period of confinement. It stands to reason that when an inmate freely admits to or fails to challenge the veracity of allegations contained in a misbehavior reports, and is afforded a hearing and an appeal process, such misbehavior can no longer serve as a basis for a retaliatory claim. See *Bey v. Eggleton,* No. 96 CIV. 3302 (DLC), 1998 WL 118158, at *5 (S.D.N.Y. Mar. 17, 1998) (dismissal of plaintiff's retaliation claim on summary judgment was warranted where inmate did not challenge the underline misbehavior charges). Accordingly, Plaintiff's claim premised alleged fabricated misbehavior report regarding the impermissible possession of contraband is deemed dismissed with prejudice.

Lastly, Plaintiff's retaliation claim premised on defamation similarly fails. Plaintiff alleges that following the discovery of the contraband, "Captain Hermans embarked on a week-long smear campaign…he falsely…reported [Plaintiff] possessed drugs. (Compl. para. 29.) Absent more, the mere allegation of *per se* defamation is insufficient to support a plausible claim of retaliation. Moreover, Plaintiff admitted to the possession. Accordingly, Plaintiff's retaliation claim premised on defamation is deemed dismissed with prejudice.

### *Monell* Liability

Plaintiff attempts to assert a *Monell* claim against Westchester County for alleged

retaliatory conduct for availing himself of the grievance procedure at the WCDC.[3] After liberally interpreting the Complaint and according *pro se* plaintiff every favorable inference, the Court finds that Plaintiff has failed to plead a plausible claim. Accordingly, Plaintiff's claim asserted against Westchester County is dismissed without prejudice.

A municipality, like Defendant, may be sued under Section 1983 only "when execution of [the] government's policy or custom ... inflicts the injury." *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Such a claim is commonly referred to as a *Monell* claim. A plaintiff asserting a *Monell* claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). Courts in this Circuit generally apply a two-prong test for Section 1983 claims brought against a municipal entity. *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir. 1985). First, the plaintiff must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused [the plaintiff's] injuries beyond merely employing the misbehaving officer." *Id.* (internal citation omitted). Second, the plaintiff must establish a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

For an unofficial policy or custom to invite *Monell* liability, the practice, custom or usage must be so widespread and so persistent that it has the force of law. See *Lauro v. City of New York*, 39 F. Supp. 2d 351, 366 (S.D.N.Y. 1999), rev'd on other grounds, 219 F.3d 202 (2d Cir. 2000). A plaintiff may plausibly satisfy the "policy or custom" requirement by alleging:

---

[3] Plaintiff alleges that employees of the WCDC retaliated against him for filing a grievance on September 21, 2023.

(1) a formal policy officially endorsed by the municipality;
(2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question;
(2) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or
(3) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

See *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations omitted).

To overcome a motion to dismiss, a complaint must include more than broad or vague allegations to support a *Monell* claim. "[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993); see also *Davis v. City of New York*, No. 07-CV-1395(RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008) (holding that "conclusory allegations that a municipality failed to train and supervise its employees" are insufficient to state a *Monell* claim absent supporting factual allegations). Similarly, it is not enough to allege simply that a municipal policy or custom exists. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). Notably, a municipality may not be held liable under Section 1983 on a *respondeat superior* theory solely because the municipality employs an individual who violated the law. *Monell*, 436 U.S. at 692.

Here, other than general conclusory statements, Plaintiff offers no factual allegations suggesting the plausible existence of a policy or custom which contributed to the alleged misconduct. While Plaintiff references four prior lawsuits commenced by inmates and/or detainees against Westchester County and WCDC for the purpose of attempting to establish a pattern or history of similar impermissible conduct (i.e. a practice or custom), such effort fails.

A. 20

In *Ross v. Correct Care Solutions LLC*, No. 11-CV-8542(DLC), the plaintiff asserted, *inter alia*, claims for inadequate medical and dental care, and First Amendment retaliation. The action was settled with no admission of wrongdoing. In *Santiago v. Westchester County*, 13-cv-0188 (LGS), the plaintiff asserted, *inter alia*, claims for failure to supervise, use of excessive force and the denial of access to the grievance procedure. No claim of retaliatory misconduct was asserted. While the case settled, there is no indication of an admission of misconduct or liability on the part of the County.

In *Gomez v. Westchester County*, 18-cv-00244 (NSR), the plaintiff alleged, *inter alia*, that he was denied the right to freely exercise his religion. More specifically, the plaintiff alleged that he was depraved of special dietary foods based on his religious observances. By order dated November 28, 2023, the action was dismissed for failure to prosecute. In *George v. Westchester County*, 20-cv-1723 (KMK) the plaintiff asserted, *inter alia*, due process claims concerning alleged false misbehavior reports, the impartiality of the disciplinary hearings and the hearing officer.  Much like the previously mentioned matter, by order dated October 3, 2023, the action was dismissed for failure to prosecute.

Individually and collectively the referenced cases are insufficient to support a finding of an official or unofficial policy, custom or practice. The mere assertion of prior unsupported claims of similar misconduct are insufficient to establish a custom, practice or an unofficial policy. Plaintiff's assertions "only points to the alleged constitutional deprivations that he [purportedly] suffered," which is insufficient. *See Kiss v. Torres*, No. 21-CV-10391 (KMK), 2024 WL 1210941, at *23 (S.D.N.Y. Mar. 19, 2024)

Likewise, Plaintiff's reliance on a November 19, 2009 investigative report authored by

A. 21

the United States Attorney's Office, Civil Rights Division is unavailing. While the report found, *inter alia*, that WCDC engaged in a pattern of failing to adequately protect detainees and inmates from harm and serious risk of harm from staff, provided inadequate medical and mental health care, and failed to maintain an adequate grievance procedure, the findings were based on a review of WCDC procedures then in place, and incident reports from 2006 and 2007. Plaintiff's reliance on alleged similar and/or dissimilar incidents that purportedly took place close to two decades ago are insufficient to support a finding of a pattern or practice of misconduct in 2024.

To the extent Plaintiff asserts a *Monell* claim for failure to train and supervise, the claim similarly fails. In order to assert a claim for failure train to or inadequate training, the plaintiff must allege a deliberate indifference to the rights of persons with whom the law enforcement official(s) come into contact. See *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1351, 1359 (2011); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989) Plaintiff's passing conclusory assertions suggesting a lack of supervision and training— unsupported by specific facts—are insufficient. Thus, warranting dismissal of the claim without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants motion to Dismiss Plaintiff's Complaint in its entirety. Plaintiff's First Amendment retaliation claim is dismissed without prejudice except as to those claims premised an alleged on impermissible searches, fabricated misbehavior report for possession of contraband and defamation which are dismissed with prejudice. Plaintiff's *Monell* claim is dismissed without prejudice.

Generally, *pro se* plaintiffs are allowed an opportunity to amend their complaint before the Court will dismiss it with prejudice. *Owens v. N.Y.C. Dep't of Sanitation*, No. 11-CV-

8297(ALC), 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013) ("[A] court should grant leave to amend [to a pro se litigant] at least once before dismissing [a complaint] with prejudice"); *Breer v. Maranville*, No. 12-CV-0053, 2012 WL 6597707, at *3 (D. Vt. Nov. 27, 2012) ("The Second Circuit has cautioned that district courts should not dismiss *pro se* complaints with prejudice without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (internal quotation marks omitted).

The Court emphasizes that to the extent Plaintiff elects to file an Amended Complaint, he should bear in mind that the Amended Complaint will replace not supplement his initial complaint so any claims, facts, or attachments that Plaintiff wishes the Court to consider going forward must be within or attached to the Amended Complaint. This means that his previous complaint and other filings will no longer be the operative documents containing his pleadings and exhibits—everything that is essential must be contained in or attached to the Amended Complaint.

Separately, the Court advises Plaintiff that he should strive towards producing an accessible, concise, and simple statement of his claims. At this point in the litigation, Plaintiff is not required to provide evidence to prove his claims, instead he should focus on including factual allegations in the complaint that allege plausible claims for relief. Recognizing the apparent challenges Plaintiff has faced collecting his exhibits and providing them all in one single filing, the Court will afford Plaintiff a longer than usual deadline. Accordingly, Plaintiff is directed to file his Amended Complaint on or before December 18, 2024. Should Plaintiff file an Amended Complaint, the Defendants are directed to answer or otherwise respond by January 15, 2025, and the parties are directed to confer, complete, and file a Case Management Plan and Scheduling Order (blank form attached) by February 19, 2025. If Plaintiff fails to timely file an Amended

A. 23

Complaint, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 22.


Dated:    November 07, 2024                                  SO ORDERED:
          White Plains, New York

                                        _____
                                              NELSON S. ROMÁN
                                        United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JIANQIAO LU,

Plaintiff,

v.

GEORGE HERMANS,
SULAHUDDEEN AZIM,
WESTCHESTER COUNTY,

Defendants.

Case No.:  24-CV-_____

**COMPLAINT**

*JURY TRIAL DEMANDED*

---

Plaintiff JIANQIAO LU, *pro se*, hereby alleges as follows:

**INTRODUCTION**

1. "[P]risoners retain the constitutional right to petition the government for the redress of grievances." *Turner v. Safley*, 482 U.S. 78, 84 (1987). And yet the Westchester County Department of Correction ("WCDOC") strives to chill—indeed, freeze—the exercise of that right by adopting a policy of retaliation against grievance writers. Falling prey to this scheme, I was slapped with a misbehavior report, stripped of four hard-earned jobs, and evicted from the jail "penthouse": all within hours of filing a grievance. Worse, I was later placed in keeplock for weeks and declared *persona non grata* for employment purposes. Lest WCDOC thinks it can operate as a Constitution-free zone, I seek compensatory and punitive damages in this 42 U.S.C. § 1983 action.

1

## PARTIES

2.	I, Plaintiff Jianqiao Lu, am a 30-year-old citizen of China lawfully residing in the United States. At all relevant times herein, I was a pretrial detainee in the custody of WCDOC in Valhalla, New York. I continue to be incarcerated at WCDOC, awaiting trial by New York State.

3.	Defendant George Hermans ("Captain Hermans"), sued in his individual capacity, was at all relevant times herein a duly sworn correctional captain at WCDOC, acting under color of state law.

4.	Defendant Sulahuddeen Azim ("Captain Azim"), sued in his individual capacity, was at all relevant times herein a duly sworn correctional captain at WCDOC, acting under color of state law.

5.	Defendant Westchester County (the "County") is a municipal organization existing under and by virtue of the laws of New York State, and is responsible for the policy, practice, procedure, supervision, implementation, and conduct of all matters pertaining to WCDOC.

## JURISDICTION AND VENUE

6.	This action is brought pursuant to the First Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court thus has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7.	Venue is proper in this district under 28 U.S.C. § 1391(b).

A. 26

## FACTS

### The Prelude

8.        On October 25, 2021, I was remanded to the custody of WCDOC, pursuant to criminal charges filed by New York State.

9.        Shortly thereafter, I applied and was approved for employment within WCDOC. As a result, I was moved to 4NW, a housing unit reserved for inmate workers (known internally as "trustees"). 4NW is situated in the New Jail, the newest of three housing structures at WCDOC, and is colloquially referred to as the jail "penthouse" for its relatively comfortable conditions of confinement.

10.        Although inmate employment at WCDOC is highly competitive, with only one in about 18 residents ever hired, I managed to rise through the trustee ranks and eventually secure four coveted positions. Specifically, by September 2023, I was employed by the Paint Crew, the Captain's Crew (11PM-7AM), the Sanitation Detail (3PM-11PM), and the 3-Core Law Library.

11.        These trustee jobs generated a combined weekly pay of $195.00.[1] As an added benefit of my employment, I was provided daily access to meals and beverages that are unavailable to the general inmate population. This amounted to approximately $140.00 a week.

12.        On the night of September 18, 2023, while performing my assigned duties on the Captain's Crew, I was improperly targeted for a strip search. Officer C.B.,[2] who initiated the strip search, claimed that I was to be strip searched on a daily basis "per departmental policy and procedure." But I had never been strip searched in the preceding 14 months doing the same job,

---

[1] Or $10,140.00 annually—a not insignificant sum for an incarcerated person.

[2] WCDOC employees who are not parties to this action are referred to herein by their initials.

nor did Officer C.B. provide any written policy upon request. I complied with the strip search, which yielded negative findings.

## The Protected Activity

13.      On September 19, 2023, I filed a grievance (the "First Grievance"), challenging the propriety of the strip search. That same night, I was once and again strip searched without reasonable suspicion. The next day, I submitted another grievance (the "Second Grievance").[3]

14.      On September 20, 2023, for the third night in a row, I was ordered to strip naked for no valid reason, the sanctity of my body violated and the last shred of my dignity taken away.

15.      On September 21, 2023, at approximately 8:30 PM, I handed a third grievance (the "Third Grievance") concerning the strip searches to Captain Hermans, who was at the time working overtime as the Sector Supervisor for 4NW, my housing unit.

16.      In the Third Grievance, I reiterated that the ongoing strip searches were unlawful and part of "a personal vendetta designed to humiliate and dehumanize rather than to achieve legitimate penological objectives," and stated that I would seek judicial intervention should the strip searches persist.[4]

## The Adverse Action

17.      On September 22, 2023, at around 7:45 AM, I was aroused from sleep by a loud bang on my cell door. I was subsequently handcuffed and removed from my cell while a shakedown took place. The search left my cell in shambles, with legal papers scattered all over the floor and family photos damaged by water.

---

[3] The First Grievance was ultimately denied by Sergeant W.N. and the Second Grievance inexplicably disappeared.

[4] Although the strip searches were unlawful, they are not at issue in this action, which focuses on First Amendment retaliation.

18. On information and belief, Captain Hermans, in his role as the Shift Commander that morning, ordered that my cell be searched.

19. Soon after the shakedown, at around 8:30 AM, Sergeant S.B. arrived on 4NW and returned the Third Grievance to me, stating that Captain Hermans would not accept it because "the grievance form wasn't filled out correctly."

20. Then, around 10 AM, I corrected the purported error on the grievance form and resubmitted the Third Grievance to Sergeant S.B.—my fate was sealed at this point.

21. No more than 45 minutes later, at about 10:45 AM, Sergeant S.B. materialized yet again, this time handing me a misbehavior report and charging me with (1) "Disorderly Conduct" and (2) "Possession of Any Contraband."

22. Specifically, the misbehavior report alleged that assorted "contraband," including pens, highlighters, and a paper clip had been discovered during the cell search. The report also claimed that a Thanksgiving-themed sticker sheet found in my cell had "tested positive" for a substance considered "contraband," without specifying what substance it was.[5]

23. I then explained to Sergeant S.B. that I believed I was allowed to have the stationery items because during past cell searches they had never been confiscated from my cell.

24. I also contested the veracity of the other contraband charge. The sticker sheet in question, I told Sergeant S.B., had previously been tested and cleared by the Mail Room and delivered to me along with a set of Thanksgiving-themed greeting cards.[6] I offered to show her the package receipt.

---

[5] It bears note that I was charged with "Possession of Any Contraband," a class 3 infraction, and not "Possession of a Controlled Substance," a more serious, class 4 infraction. It is unclear what chemical compound could constitute "contraband" but not a "controlled substance."

[6] Per WCDOC policy, all incoming mail and packages are swabbed and tested for contraband.

25.    Sergeant S.B. informed me that the matter was "above her pay grade" and that she was just "following orders."

26.    On information and belief, Captain Hermans ordered his subordinates to fabricate the contraband charges and to create the misbehavior report.

27.    After receiving the misbehavior report, I was promptly suspended from work, evicted from 4NW, and transferred to a different housing unit—again by order of Captain Hermans.

28.    Worse still, following the incident, Captain Hermans embarked on a weeks-long smear campaign to destroy my reputation. On information and belief, he falsely and repeatedly claimed to other WCDOC staff, including my work supervisors, that I had possessed drugs.[7]

29.    On September 26, 2023, I appeared before Captain Azim, then WCDOC's Disciplinary Hearing Officer, for disposition of the misbehavior report. Captain Azim, at the outset of the hearing, remarked that "I see why your cell got searched"—an unmistakable reference to my grievance filing.

30.    I admitted at the hearing to possessing the stationery items but maintained my innocence as to the sticker sheet. I requested to provide documentation that I had received the stickers in an approved package, which request was summarily denied. I was found guilty of all charges listed on the misbehavior report.

31.    Despite a spotless disciplinary record and my stellar performance as a trustee for nearly two years, I was sentenced to 20 days' punitive confinement ("keeplock") and exiled to

_____

[7] This lie even spilled over to my state criminal proceeding. During a November 28, 2023 hearing, the prosecutor in my case falsely claimed that I was in possession of controlled substances at WCDOC.

6

the Old Jail, a section of WCDOC notorious for its harsh conditions. I was also terminated from all my job assignments.

32.      At the time of my firing, I was one of the most senior and highest paid trustees at WCDOC. My abrupt removal from 4NW and banishment to the Old Jail thus sent shock waves throughout the trustee group. By orchestrating this stunt, Defendants intended to send a message to all trustees: "Keep your mouth shut, or you'll be next."

33.      The message rang loud and clear. On information and belief, for a period following my September 22, 2023 ouster, the number of inmate grievances originating from 4NW sharply decreased. In other words, the adverse action described herein had an objective chilling effect on inmates of ordinary firmness and discouraged them from exercising their First Amendment rights.

34.      I was also subjectively chilled by Defendants' actions. For one thing, I did not appeal Captain Azim's disciplinary decision in fear of further retaliation. Despite the squalid and inhumane conditions in the Old Jail, I dared not file another grievance while housed there. To this day, I am still apprehensive about using the grievance system ever again.[8]

35.      Moreover, the loss of income, the forced separation from coworkers and friends, and the character assassination perpetrated by Defendants have left me in a profound state of emotional distress. These events would be life-altering in the outside world, and are all the more traumatizing behind prison walls. As a result of Defendants' actions, I have suffered bouts of depression and anxiety, and have on three occasions sought mental health intervention.[9]

---

[8] I did begrudgingly file one grievance in October 2023 for the sole purpose of exhausting administrative remedies with respect to this action.

[9] To be clear, I am not seeking compensatory damages on the basis of these emotional injuries. *See* 42 U.S.C. § 1997e(e).

7

36.     Although my keeplock status ended on October 16, 2023, and although WCDOC policy permits reemployment of an inmate 30 days after any disciplinary action, I have neither been reinstated to any of my previous positions nor had success applying for a different job. On information and belief, Defendants continue to deter their subordinates from rehiring me.

**The Causal Connection**

37.     In addition to the unusually suggestive temporal proximity between my filing of grievances and the adverse action described above, Defendants' retaliatory motives can be gleaned from the following facts.

38.     *First*, on September 28, 2023, I received a response from Sergeant S.B. regarding the Third Grievance, in which she attributed the strip searches I had endured to the discovery of "contraband" in my cell. This, of course, was a flat-out lie, unless time runs backwards at WCDOC.

39.     Recall, the strip searches in question had occurred between September 18 and 20, 2023, and the purported contraband was not found until the morning of September 22, 2023.

40.     Put differently, the cell search and the subsequent misbehavior report were part of an effort, orchestrated by Captain Hermans, to retroactively manufacture reasonable suspicion to justify the strip searches that were the subject of the Third Grievance.

41.     *Second*, and relatedly, the adverse action was designed to thwart my ongoing challenge to WCDOC's strip search policy. Because I was being strip searched during one of my job assignments, to remove me from that position would effectively put a stop to the strip searches and render my complaint moot.

42.       But there was no excuse to summarily fire me—after all, I was completing my assigned tasks and complying with the strip searches. And so in a calculated attempt to engineer a fireable offense, Captain Hermans ordered the cell shakedown and the fabrication of the contraband charge.

43.       By stripping me (no pun intended) of ALL my jobs, Captain Hermans ensured that no more grievances (or, for that matter, lawsuits) could be filed in connection with the strip searches.

44.       *Third*, Captain Azim was predisposed to retaliating against grievance filers due to his conflicting responsibilities. As mentioned before, Captain Azim served as WCDOC's Disciplinary Hearing Officer, responsible for disposing of all inmate disciplinary matters. But at the same time, he was also WCDOC's Grievance Coordinator, tasked with liaising between the jail and the New York State Commission of Correction ("NYSCOC"), the final authority in the state's three-step grievance review process.

45.       In the latter capacity, Captain Azim was incentivized to prevent meritorious inmate complaints from reaching NYSCOC and to present a rosy image of WCDOC to the same body. As a result, he was intimately familiar with all pending inmate grievances.

46.       Captain Azim's dual roles, however, represented a glaring conflict of interest that subjected frequent grievance filers to improper disciplinary sanctions. Indeed, I myself was put in keeplock for 20 days—a punishment grossly disproportionate to my purported offense and typically reserved for serious infractions such as attacking another inmate or threatening a staff member.

47.     In short, Captain Azim's competing interests resulted in a vicious cycle of retaliation that further discouraged WCDOC residents from exercising their First Amendment rights.

48.     *Last but not least*, numerous uniformed staff at WCDOC have commented on Defendants' retaliatory animus. For example, shortly after I was moved to the Old Jail, Officer A.G., whom I had previously worked under, remarked that "I heard you were set up," referencing the false contraband charge.

49.     Around the same time, Officer J.A. jokingly called me a "fucking idiot" for handing Captain Hermans a grievance. Sergeant C.C. shared the same sentiment.

50.     Officer I.A. suggested that I "write to Captain Hermans" and tell him I have "learned my lesson."

51.     Officers T.A., K.B., and B.C., when asked whether I could return to work, indicated that it would be "up to Captain Hermans."

52.     More recently, Captain J.A. observed that I am unlikely to get another job because I "pissed off the wrong captain," also referring to Captain Hermans.

**Retaliation as Municipal Policy**

53.     The constitutional violation alleged herein was not an isolated event. To the contrary, it was the result of Westchester County's longstanding policies and widespread practices of failing to adequately train and supervise WCDOC employees on their obligations not to retaliate against grievance filers, and failing to discipline those who knowingly violate inmates' constitutional rights.

54.      The County has long been on actual or constructive notice that WCDOC staff routinely retaliate against inmates who utilize the grievance system to voice their concerns. Past lawsuits filed in this district have alleged just this type of misconduct. *See, e.g., Ross v. Correct Care Solutions LLC*, No. 11-CV-8542(DLC) (S.D.N.Y.) (Plaintiff alleged retaliation by WCDOC officials; case settled in 2014); *Santiago v. Westchester County*, No. 13-CV-1886(LGS) (S.D.N.Y.) (Same; settled in 2015); *Gomez v. Westchester County*, No. 18-CV-0244(NSR) (S.D.N.Y.) (Retaliation claim survived motion to dismiss but plaintiff failed to further pursue the case.).

55.      In a more recent case, *George v. County of Westchester*, No. 20-CV-1723(KMK), 2021 WL 4392485 (S.D.N.Y. Sept. 24, 2021), the plaintiff was issued a false misbehavior report for filing grievances and later punished by keeplock and the loss of good time. Although his retaliation claim survived a motion to dismiss, the plaintiff unfortunately died before he could further prosecute the action.

56.      The County has also been on notice that inmates have a First Amendment right to file grievances without fear of retaliation. In addition to the thorough court opinions issued in the aforementioned actions, which clearly and explicitly set out the law, the U.S. Department of Justice ("DOJ") has cautioned—over a decade ago—that WCDOC may not retaliate against grievance filers.

57.      Specifically, in early 2008, DOJ conducted an on-site inspection at WCDOC to identify civil rights violations. On November 30, 2009, DOJ published a 42-page Findings Letter, available at http://tinyurl.com/2p8br7zh and incorporated herein by reference, in which it

11

A. 35

detailed a litany of systemic failures that had caused "serious harm" to WCDOC residents. DOJ Letter at 2.

58.          Relevant here, DOJ found that WCDOC "fail[ed] to maintain an adequate detainee grievance system," and stressed that "[i]nmates should be able to file their grievances in a secure and confidential manner and *without threat of reprisals*." DOJ Letter at 16 (emphasis added).

59.          Despite having been put on notice of a clear pattern of illegal retaliation against grievance filers at WCDOC, Westchester County stood by idly and did nothing to train, supervise, or discipline jail staff. This inaction effectively condones, ratifies, and sanctions the kind of misconduct that Defendants perpetrated on me in this case.

60.          The policies and practices described above were consciously approved by County policymakers who were deliberately indifferent to the constitutional protections afforded to incarcerated people.

12

**COUNT I: First Amendment Retaliation**

61.        I hereby reallege and incorporate by reference all preceding paragraphs.

62.        As described above, I engaged in an activity protected by the First Amendment, to wit: the filing of grievances.

63.        As described above, Defendants took adverse action against me, to wit: the targeted shakedown, the fabricated misbehavior report, the cell transfer, the punitive confinement, the termination from job assignments, the defamation of character, and the ban on reemployment.

64.        As described above, there was a clear causal connection between my protected conduct and the adverse action.

65.        Accordingly, Defendants unlawfully retaliated against me in violation of my First Amendment rights.

**COUNT II: *Monell* Liability**

66.        I hereby reallege and incorporate by reference all preceding paragraphs.

67.        As described above, Westchester County condoned, permitted, encouraged, or ratified policies, practices, or customs that enabled WCDOC personnel to deliberately, recklessly, and repeatedly retaliate against grievance filers without consequence.

68.        As described above, County policymakers acted with deliberate indifference toward my constitutional rights by failing to train, supervise, or discipline WCDOC staff.

69.        Accordingly, the County is liable for Defendants' misconduct under *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978).

13

## RELIEF SOUGHT

WHEREFORE, I respectfully request that the Court:

A.  Enter judgement in my favor and against Captain Hermans, Captain Azim, and Westchester County;

B.  Award compensatory damages, including but not limited to lost wages, in an amount determined by a jury;

C.  Award punitive damages, by reason of the wanton, willful, and malicious nature of the misconduct described herein, in an amount determined by a jury;

D.  Grant any other relief this Court deems just and proper.

## PLRA EXHAUSTION

All available administrative remedies have been exhausted with respect to the claims set forth in this complaint.

## PREVIOUS LAWSUITS

I have filed one previous lawsuit while incarcerated, *see Lu v. Rocah*, No. 22-CV-9715(NSR) (S.D.N.Y.). That case was dismissed without prejudice on June 28, 2023.

## JURY DEMAND

I hereby demand a trial by jury pursuant to Fed. R. Civ. P. 38(b) on all issues so triable.

14

Dated: February 12, 2024
Valhalla, New York

Respectfully submitted,

/s/ Jianqiao Lu
Jianqiao Lu (He/Him/His)
*Pro Se* Plaintiff[10]

WCDOC #265008
PO Box 10
Valhalla, NY 10595-0010
lu@luvhermans.com

---

[10] To expedite filing and improve legibility, this document was telephonically transcribed by a non-incarcerated individual under my direction. No attorney assisted in the preparation of this complaint.

15

## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.


Executed in Valhalla, New York                    /s/ Jianqiao Lu
On February 12, 2024                              Jianqiao Lu

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _11/25/2025_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JIANQIAO LU,

                     Plaintiff,

    -against-

GEORGE HERMANS, SULAHUDDEN AZIM, and
WETSHCESTER COUNTY,

                     Defendants.

No. 24-cv-1023 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Pending before the Court is *pro se* Plaintiff Jianqiao Lu's motion for reconsideration dated November 19, 2024. (ECF No. 30, "Pl. Mot.") Plaintiff seeks the Court to reconsider its November 7, 2024 Opinion & Order dismissing Plaintiff's First Amendment retaliation claims against Defendants George Hermans and Sulahuddeen Azim.[1] (ECF No. 29, "Order.") Plaintiff specifically requests the Court to (1) clarify its position on the "checkmate doctrine"; (2) consider intervening caselaw; and (3) revisit arguments made in the parties' motion to dismiss papers.[2] (Pl. Mot. at 2, 4; ECF No. 38.)

For the reasons discussed below, the Court does not find Plaintiff's arguments persuasive and DENIES his motion for reconsideration.

**DISCUSSION**

A motion for reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Dimps v. New York State Dep't*

---

[1] Plaintiff voluntarily withdraws his *Monell* claims against Defendant Westchester County. (Pl. Mot. at 2.) The Court therefore dismisses all claims asserted against Defendant Westchester County with prejudice.
[2] After filing his motion papers, Plaintiff also submitted a letter dated March 6, 2025, informing the Court of recently published judicial decisions that "may be instructive in deciding [his] motion for reconsideration." (ECF No. 38.)

*of Corr. & Cmty. Supervision*, 2025 WL 2237408, at \*1 (S.D.N.Y. Aug. 6, 2025). "Motions for reconsideration are properly granted only if there is a showing of: (1) an intervening change in controlling law; (2) the availability of new evidence or (3) a need to correct a clear error or prevent manifest injustice." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 696 (S.D.N.Y. 2011).

## I.      Clarification of the Checkmate Doctrine

Plaintiff first requests that the Court clarify its position on the checkmate doctrine. (Pl. Mot. at 2.) This Court held that Plaintiff's First Amendment retaliation claims failed, in part, because of the contradictory allegations in his Complaint. For instance, Plaintiff alleged that Westchester County Department of Corrections personnel discovered contraband in his cell pursuant to a search. (Order at 3.) Plaintiff then proceeded to allege the discovery of contraband was fabricated yet admitted to possessing impermissible material in his cell. (*Id*.) The Court therefore determined that "when an inmate freely admits to or fails to challenge the veracity of allegations contained in a misbehavior report[], and is afforded a hearing and an appeal process, such misbehavior can no longer serve as a basis for a retaliatory claim." (*Id*. at 9; *Bey v. Eggleton*, 1998 WL 118158, at \*5 (S.D.N.Y. Mar. 17, 1998)).

According to Plaintiff, the Court's ruling neither adopts nor endorses the majority view of the checkmate doctrine. (Pl. Mot. at 2–3.) Under the checkmate doctrine, the presence of "some evidence" that a prisoner engaged in the alleged misconduct "essentially checkmates his retaliation claim." *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994); *see also Watson v. Rozum*, 834 F.3d 417, 426 (2016) (same); *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (same). Despite Plaintiff citing to several judicial decisions rejecting the checkmate doctrine, those cases are "from outside the Second Circuit and therefore not 'controlling' on this Court." *United States v. Valles*,

2024 WL 1433708, at *3 (S.D.N.Y. Apr. 3, 2024). The Second Circuit has also adopted the checkmate doctrine. *See, e.g.*, *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) ("The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff 'committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.'"); *Salvatierra v. Connolly*, 2012 WL 996944, at *13 (S.D.N.Y. Feb. 29, 2012), *report and recommendation adopted*, 2012 WL 1003562 (S.D.N.Y. Mar. 26, 2012) (same); *Holland v. Goord*, 758 F.3d 215, 226 (2d Cir. 2014) (same). Indeed, the Court's Order dismissing Plaintiff's First Amendment retaliation claims relied on precedent from this district. (Order at 9; *Bey*, 1998 WL 118158, at *5).

Given that the Court applied appropriate precedent from the Second Circuit, the Court denies reinstating Plaintiff's First Amendment retaliation claims.

## II. Intervening Change in Controlling Law

Plaintiff next argues that recently published judicial decisions "may be instructive in deciding [his] motion for reconsideration." (ECF No. 38.)

Plaintiff first identifies *Walker v. Senecal*, a recent Second Circuit decision acknowledging that "precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." (ECF No. 38; 130 F.4th 291, 296 (2d Cir. 2025)). The *Walker* court nevertheless affirmed the district court's rejection of plaintiff's *de minimis* allegations. 130 F.4th at 302. The *Walker* court only found that the "district court erred by not considering [plaintiff's] allegations about [an] attack by two officers in conjunction with [defendant's] threat" when analyzing the plaintiff's retaliation claims. *Id*. at 301. Such facts are readily distinguishable from the instant action because Plaintiff was never attacked by Defendants.

Plaintiff also informs the Court that one of its recent decisions was reversed for "adopting an unduly narrow interpretation of what constitutes adverse action in a prisoner retaliation claim." (ECF No. 38.) Specifically, the Second Circuit in *Brandon v. Alam* vacated this Court's ruling, holding that a defendant's refusal to issue plaintiff a shower pass—which allegedly worsened plaintiff's medical condition—resulted in harm beyond the *de minimis* threshold. 2024 WL 2764431, at *2 (2d Cir. May 30, 2024). The *Brandon* court also determined that plaintiff adduced sufficient evidence to create a genuine dispute of material fact as to causation. *Id*. Such facts are again readily distinguishable from the instant action at hand. Plaintiff's claims do not involve Defendants allegedly denying him necessary medical treatment. Moreover, Plaintiff's causation allegations that Defendants embarked on a smear campaign were dismissed because they were conclusory and could not support a defamation claim. (Order at 9.)

Consequently, the Court cannot conclude that there was an intervening change in controlling law that would justify granting Plaintiff's motion for reconsideration.

## III. Need to Correct a Clear Error or Prevent Manifest Injustice

Finally, Plaintiff argues that the Court did "not even read [his] letter-brief opposing the motion to dismiss" because the Court did not rely on Plaintiff's cited caselaw. (ECF No. 34, "Pl. Reply," at 2.) Particularly, Plaintiff argues that the Court ignores his reliance on *Kotler v. Boley*, 2022 WL 4589678, at *1 (2d Cir. Sept. 30, 2022). (*Id*.) As an initial matter, Plaintiff can be assured that the Court reviewed his April 22, 2024 letter in its entirety. (ECF No. 18.) Plaintiff's letter, however, was not a letter-brief opposing Defendants' motion to dismiss. It was merely a response to Defendants' letter motion requesting a conference concerning its anticipated motion to dismiss. (*Id*.) A review of the docket confirms that Plaintiff "waive[d] any further response" to Defendants' motion to dismiss. (ECF No. 21.) Nevertheless, "[a] motion for reconsideration is not an

appropriate tool to rehash [previously made] argument[s]." *Noel v. City of New York*, 2023 WL 8850070, at *2 (S.D.N.Y. Dec. 21, 2023); *see also Abadi v. NYU Langone Health Sys.*, 714 F. Supp. 3d 387, 393 (S.D.N.Y. 2024) (denying motion for reconsideration because "[t]his ground for reconsideration essentially rehashes arguments that were rejected by the Court in its earlier decision"); *Tripathy v. Schneider*, 2025 WL 79861, at *2 (W.D.N.Y. Jan. 13, 2025) (denying motion for reconsideration "[b]ecause [plaintiff's] arguments for reconsideration are a rehash of arguments he already raised—or could have raised—in opposition to Defendants' [motion]").

Notwithstanding Plaintiff's inappropriate arguments, his reliance on *Kotler* does not warrant the reconsideration of his case. The cell search in *Kotler* was followed by "a false report— based on contraband that allegedly would not have ordinarily resulted in discipline—and false testimony at [the plaintiff's] hearing." *Kotler*, 2022 WL 4589678, at *2. The *Kotler* plaintiff was then punished with several months of disciplinary confinement. *Id*. While Plaintiff alleged that the contraband in the instant action was never previously confiscated, he ultimately conceded to possessing impermissible material in his cell. Order at 9. Plaintiff's conflicting allegations, however, do not sufficiently plead that Defendants submitted false statements or reports during Plaintiff's hearing. *Id*. Nor was Plaintiff subject to several months of disciplinary confinement. *Id*. Plaintiff's argument is also weakened because he admits that the night before he filed his first grievance that his cell was searched "per departmental policy and procedure" and that this would be performed daily. *Id*. at 2. This search would have occurred before any alleged retaliatory action.[3] *Id*. at 3.

---

[3] Plaintiff also ignores that his First Amendment retaliation claims were dismissed because they were largely conclusory. For instance, Plaintiff alleged that "on information and belief" Defendant Hermans ordered that Plaintiff's cell be searched, "on information and belief" Defendant Hermans ordered his subordinates to fabricate the contraband and to create a misbehavior report, "Captain Azim was predisposed to retaliating against grievance filers due to his [alleged] conflicting responsibilities," "Captain Azim was incentivized to prevent meritorious inmate complaints from reaching NYSCOC, and Captain Azim's competing interest resulted in a vicious cycle of retaliation [that] discouraged residents from exercising their First Amendment." Order at 7.

As a result, the Court determines that Plaintiff has failed to show that there exists a clear error or manifest injustice that would be remedied by granting his motion for reconsideration.

## CONCLUSION

Plaintiff fails to satisfy any of the three avenues through which a party can successfully argue a motion for reconsideration. The Court therefore DENIES Plaintiff's motion for reconsideration without prejudice. Given that Plaintiff voluntarily withdraws his *Monell* claims, the Court dismisses all claims against Defendant Westchester County with prejudice. The Clerk of Court is kindly directed to mail a copy of this Order to *pro se* Plaintiff at the address listed on ECF and to show service on the docket. The Clerk of Court is also kindly directed to terminate the motion.

SO ORDERED.

Dated: November 25, 2025
      White Plains, NY

Nelson S. Román, U.S.D.J.

JIANQIAO LU
WCDOC #265008
PO Box 10
Valhalla, NY 10595-0010
lu@luvhermans.com

_____

November 26, 2025

<u>Via Email</u>
The Honorable Nelson S. Román
United States District Judge
c/o Pro Se Intake Unit
Charles L. Brieant Jr. Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

   **RE:** *Lu v. Hermans*, **7:24-CV-1023 (NSR)**
     <u>**Request for Entry of Final Judgment**</u>

Dear Judge Román:

   I am the *pro se*, incarcerated Plaintiff in the above-referenced action. I respectfully submit this letter to request that the Court enter final judgment and close this case.

   On November 25, 2025, the Court issued an Opinion and Order denying my motion for reconsideration. (ECF 40.) As stated in my motion (*see* ECF 30 at 5 n.5), should the Court deny reconsideration, I do not intend to file an amended complaint. Instead, I elect to stand on my original pleading (ECF 1) and wish to pursue an appeal of the Court's various decisions in this matter.

   Accordingly, I respectfully request that the Court issue an order (1) dismissing the complaint with prejudice and (2) directing the Clerk of Court to close this case and enter judgment on the docket.

[Intentionally left blank]

A. 47

Thank you for your consideration.

Respectfully submitted,
/s/ Jianqiao Lu_____
Jianqiao Lu[1]

cc:     Westchester County Attorney's Office
       Robert P. Taglia, Assistant County Attorney

---

[1] This document has been telephonically transcribed and prepared by a nonincarcerated individual under my direction. *See* Instructions: Email Pro Se Filings (April 2021), available at https://www.nysd.us courts.gov/sites/default/files/2021-04/2021-04-21-Email-Instructions-pro-se-filings-final.pdf (permitting typed signatures and third-party emails).

2

**JIANQIAO LU**
WCDOC #265008
PO Box 10
Valhalla, NY 10595-0010
lu@luvhermans.com

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: _12/02/2025_ |

November 26, 2025

<u>Via Email</u>
The Honorable Nelson S. Román
United States District Judge
c/o Pro Se Intake Unit
Charles L. Brieant Jr. Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

      **RE:**    ***Lu v. Hermans*, 7:24-CV-1023 (NSR)**
                <u>**Request for Entry of Final Judgment**</u>

Dear Judge Román:

      I am the *pro se,* incarcerated Plaintiff in the above-referenced action. I respectfully submit this letter to request that the Court enter final judgment and close this case.

      On November 25, 2025, the Court issued an Opinion and Order denying my motion for reconsideration. (ECF 40.) As stated in my motion (*see* ECF 30 at 5 n.5), should the Court deny reconsideration, I do not intend to file an amended complaint. Instead, I elect to stand on my original pleading (ECF 1) and wish to pursue an appeal of the Court's various decisions in this matter.

      Accordingly, I respectfully request that the Court issue an order (1) dismissing the complaint with prejudice and (2) directing the Clerk of Court to close this case and enter judgment on the docket.

[Intentionally left blank]

*See* Pg. 2

**MEMO ENDORSED**

Thank you for your consideration.

Respectfully submitted,
/s/ Jianqiao Lu
Jianqiao Lu[1]

cc:    Westchester County Attorney's Office
Robert P. Taglia, Assistant County Attorney

The Court is in receipt of *pro se* Plaintiff's letter, dated November 26, 2025, voluntarily dismissing his Complaint. (ECF No. 41.) The Court GRANTS Plaintiff's motion and dismisses his Complaint with prejudice. The Clerk of Court is kindly directed to enter judgment in favor of Defendants George Hermans and Sulahuddeen Azim and close this case. The Clerk of Court is also kindly directed to mail a copy of this endorsement to *pro se* Plaintiff at the address listed on ECF and to show service on the docket.

Dated: December 2, 2025
    White Plains, NY

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

---

[1] This document has been telephonically transcribed and prepared by a nonincarcerated individual under my direction. *See* Instructions: Email Pro Se Filings (April 2021), available at https://www.nysd.us courts.gov/sites/default/files/2021-04/2021-04-21-Email-Instructions-pro-se-filings-final.pdf (permitting typed signatures and third-party emails).

2

# JIANQIAO LU
WCDOC #265008
PO Box 10
Valhalla, NY 10595-0010
lu@luvhermans.com

February 3, 2025

<u>Via Email</u>
The Honorable Nelson S. Román
United States District Judge
c/o Pro Se Intake Unit
Charles L. Brieant Jr. Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/4/2025__
```

**RE:**  *Lu v. Hermans*, **7:24-CV-1023 (NSR)**

Dear Judge Román:

I am the *pro se*, incarcerated Plaintiff in the above-referenced action. This is a **third** request that the Court vacate the briefing schedule at ECF 32 and reinstate the motion for reconsideration at ECF 30.

The Court issued an Opinion and Order on November 7, 2024, granting Defendants' motion to dismiss the instant complaint. (*See* ECF 29.) On November 19, 2024, pursuant to Local Civil Rule 6.3, I moved for reconsideration of that dismissal. (*See* ECF 30.) Defendants promptly opposed my motion on November 22, 2024. (*See* ECF 31.) However, before I could submit my reply, the Court issued a memorandum endorsement on November 25, 2024, denying the motion "without prejudice to renew," "waiv[ing] the Pre-Motion Conference," and setting a new briefing schedule on the same motion extending into February 2025. (*See* ECF 32 at 1.) Despite this, on November 29, 2024, I filed my reply to Defendants' opposition, along with a request that the Court deem the motion for reconsideration fully briefed and *sub judice*. Those documents were docketed by the Clerk's Office on December 2, 2024. (*See* ECF 33 & 34.) The following day, I submitted a more detailed letter asking the Court to vacate the superfluous briefing schedule. (*See* ECF 35.) **To date, however, the Court has not addressed these requests.**

**See pg. 2**

*MEMO ENDORSED*

A. 51

For much the same reasons stated in my December 3, 2024 letter, I maintain that my motion for reconsideration was timely filed, fully briefed, and in compliance with all applicable Local Civil Rules and this Court's Individual Practices. Given these circumstances, I have not adhered to the briefing schedule set forth at ECF 32, as it appears to serve no purpose other than delay. Accordingly, I respectfully seek clarification from the Court as to whether my motion for reconsideration is under submission and when I may expect a ruling on the merits.

Thank you for your consideration.

Respectfully submitted,
/s/ Jianqiao Lu
Jianqiao Lu[1]

cc:    Westchester County Attorney's Office
          Robert P. Taglia, Assistant County Attorney

**The Court DENIES *pro se* Plaintiff's request to vacate the briefing schedule at ECF No. 32. *Pro se* Plaintiff failed to adhere to this Court's individual rules by not seeking leave to file a Motion for Reconsideration. As a result, this Court denied *pro se* Plaintiff's Motion for Reconsideration at ECF No. 30, waived the pre-motion conference, and set a briefing schedule to ensure that the parties were both given proper notice and time to prepare materials. Notwithstanding, the Court has received the necessary supporting materials to consider *pro se* Plaintiff's Motion for Reconsideration at ECF No. 30 fully briefed and will issue an opinion in due time. The Clerk of Court is respectfully directed to mail a copy of this endorsement to *pro se* Plaintiff and show service on the docket.**

**Dated: February 4, 2025**
**White Plains, New York**

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

---

[1] This document has been telephonically transcribed and prepared by a nonincarcerated individual under my direction. *See* Instructions: Email Pro Se Filings (April 2021), available at https://www.nysd.uscourts.gov/sites/default/files/2021-04/2021-04-21-Email-Instructions-pro-se-filings-final.pdf (permitting typed signatures and third-party emails).

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d)(1)(B), I hereby certify that on June 22, 2026, I caused true and correct copies of the foregoing Brief of Plaintiff-Appellant and the Appendix thereto to be served on counsel of record, via filing on the Court's ACMS system, in accordance with Local Rule 25.1(h).

Dated: June 22, 2026

*/s/ Samuel Weiss*
Samuel Weiss

*Attorney for Plaintiff-Appellant*