# 25-3063-cv

## United States Court of Appeals
## for the Second Circuit

JIANQIAO LU,

*Plaintiff-Appellant,*

v.

GEORGE HERMANS, SULAHUDDEN AZIM,
AND WESTCHESTER COUNTY,

*Defendants-Appellees.*

ON APPEAL FROM A CIVIL JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANTS-APPELLEES**

JUSTIN R. ADIN
JASON S. WHITEHEAD
  *of Counsel*

JOHN M. NONNA
WESTCHESTER COUNTY ATTORNEY
148 Martine Avenue, Room 600
Michaelian Office Building
White Plains, New York 10601
Telephone: (914) 995-2525
jswa@westchestercountyny.gov
*Attorney for Defendants-Appellees*

July 27, 2026

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ................................ 2

STATEMENT OF THE CASE ................................................................................. 2

    A. Lu's Complaint ............................................................................................. 2

        1. Background ............................................................................................. 2

        2.  The Three Strip Searches and Grievances ........................................... 3

        3. The Search of Lu's Cell and Resulting Misbehavior Report ............... 4

        4. The Administrative Hearing ................................................................. 4

        5. Lu's Statements Regarding His Retaliation Claim ............................... 5

    B. The District Court's Decision on the Motion to Dismiss ....................... 7

STANDARD OF REVIEW ..................................................................................... 10

SUMMARY OF ARGUMENT ............................................................................... 10

ARGUMENT: THE DISTRICT COURT PROPERLY DISMISSED
    APPELLANT'S COMPLAINT ....................................................................... 12

    A. Captain Hermans ....................................................................................... 15

        1. Personal Involvement/Adverse Action ............................................. 15

        1. Causation .............................................................................................. 22

    B. Captain Azim .............................................................................................. 26

        1. Personal Involvement/Adverse Action ............................................. 26

        2. Causation .............................................................................................. 27

CONCLUSION ....................................................................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Allen v. Cuomo*, 100 F.3d 253 (2d Cir. 1996) ...............................................................26, 27

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ................................................ 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .........................................................................10, 14, 29

*Bacon v. Phelps*, 961 F.3d 533 (2d Cir. 2020) ................................................................ 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 10

*Bennett v. Goord*, 343 F.3d 133 (2d Cir. 2003) ........................................................ 12

*Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) ................................................................ 15

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ...............................................................19, 24

*Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003), *superseded by* 2003 U.S. App. LEXIS 13030 (2d Cir. Feb. 10, 2003) ............................................................. 12, 14, 21, 22

*Dawes v. Walker*, 239 F.3d 489 (2d Cir. 2001) ................................................... 13, 14, 21, 22

*DeBoe v. Du Bois*, 503 F. App'x 85 (2d Cir. Nov. 27, 2012) (summary order) ............... 10

*Dorsey v. Fisher*, 468 F. App'x 25 (2d Cir. Mar. 13, 2012) (summary order) ........................................................................................ 14, 22, 23, 28

*Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009) ................................................................ 24

*Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318 (2012) .................................................... 20

*Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2003) ................................................................ 19

*Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004) ................................................................ 19

*Grant v. County of Erie*, 542 F. App'x 21 (2d Cir. Oct. 17, 2013) (summary order) ....... 18

*Harris v. Miller*, 818 F.3d 49 (2d Cir. 2016) ................................................................ 20

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) ................................................................ 13

*Hayes v. Dahlke*, 976 F.3d 259 (2d Cir. 2020)...................................................................... 22

*Holland v. Goord*, 758 F.3d 215 (2d Cir. 2014).................................................................... 27

*Kenlock v. Mele*, No. 22-2799, 2023 U.S. App. LEXIS 32629 (2d Cir. Dec. 11, 2023) (summary order) .................................................................10, 13, 21

*Kotler v. Boley*, No. 21-1630, 2022 U.S. App. LEXIS 27411 (2d Cir. Sep. 30, 2022) (summary order) .................................................................passim

*Monell v. Department of Social Services*, 436 U.S. 658 (1978)..................................... 2

*Morales v. Mackalm*, 278 F.3d 126 (2d Cir. 2002) ............................................... 23

*Pierce v. McCarthy*, No. 25-938, 2026 U.S. App. LEXIS 19459 (2d Cir. Jul. 2, 2026) (summary order) ........................................................... 14

*Sloley v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 24-662, 2025 U.S. App. LEXIS 11882 (2d Cir. May 16, 2025) (summary order)....................................... 12

*Smith v. Levine*, 510 F. App'x 17 (2d Cir. Jan. 31, 2013) (summary order) .................... 15

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)................................................. 13

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020) .......................................14, 17

*Walker v. Senecal*, 130 F.4th 291 (2d Cir. 2025).......................................22, 23, 28

*Wright v. Goord*, 554 F.3d 255 (2d Cir. 2009) ................................................... 28

iii

## PRELIMINARY STATEMENT

Appellant Jianqiao Lu ("Lu") commenced this action for First Amendment retaliation under 42 U.S.C. § 1983, alleging that George Hermans and Sulahudden Azim, both Captains with the Westchester County Department of Corrections retaliated against him for submitting grievances about three strip searches that were conducted by other, non-defendant officers, by searching his cell, allegedly fabricating a charge of the possession of contraband, and subjecting him to an unfair administrative hearing.

There are, however, no allegations in the complaint from which the District Court—or this Court—could infer that any of the actions Lu faced were because of either Hermans or Azim wanting to retaliate against him. The grievances that Lu filed had no connection to Hermans, other than one being handed to him, and subsequently resubmitted, for something someone else did. Nor did the grievances have any connection to Azim, other than his being the grievance coordinator for the facility. Thus, Lu simply speculates and asks this Court to allow him to proceed with this action on the basis of that speculation. That is not what the law requires.

Accordingly, this Court should affirm the District Court's dismissal of Lu's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Did the District Court correctly grant Defendants-Appellees Rule 12(b)(6) motion to dismiss due to Lu's failure to state a plausible claim for First Amendment retaliation?

## STATEMENT OF THE CASE[1]

### A.    Lu's Complaint

#### 1.    Background

On or about February 12, 2024, Lu filed a complaint in the United States District Court for the Southern District of New York, alleging a violation of his right to free speech under the First Amendment. (A25, 37).[2] Specifically, Lu asserts that two jail officials retaliated against him for his filing administrative grievances regarding certain strip searches that other jail officials had performed on Lu. (*Id.*).

In or around October 25, 2021, prosecutors charged Lu with gun possession. (A11, 27). He was held without bail pending the charges against him at the Westchester County Department of Correction ("DOC"), and, specifically, the Westchester County Jail ("the Jail") located in Valhalla, New York. (*Id.*).

While Lu was incarcerated, DOC approved him for employment as an inmate trustee. Over the next two years, DOC would permit Lu to work at four of the most

---

[1] Allegations drawn from the complaint are presumed true for purposes of this appeal only.

[2] Lu also asserted a claim against the County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). He does not pursue this claim on appeal.

coveted inmate trustee job details at the Jail. (A27). One of the jobs Lu obtained included a detail known as "the Captain's Crew" with a shift ranging from 11:00 p.m. to 7:00 a.m. in the morning. (*Id.*). These four assignments earned Lu a combined approximately $195 per week, and they came with special housing and meal perks, which Lu valued at approximately $140 per week. (*Id.*).

## 2. The Three Strip Searches and Grievances

Lu had been working on the "Captain's Crew" job detail for the preceding 14 months when, on September 18, 19, and 20, 2023, correction officers conducted strip searches of Lu's person. (A27). The corrections officer ("CO") who supervised the initial strip search, CO C.B.,[3] informed Lu that he would be strip-searched on a daily basis as required by departmental policy. (*Id.*).

On the morning of September 19, 2023, Lu filed a grievance challenging the propriety of the previous night's strip search. (A28). Lu filed two additional grievances on September 20 and 21, 2023, following the second and third strip searches, respectively. (*Id.*). Lu asserted in his grievances "that the ongoing strip searches were unlawful and part of 'a personal vendetta designed to humiliate and dehumanize rather than to achieve legitimate penological objectives.'" (*Id.*). Lu threatened "judicial intervention should the strip searches persist." (*Id.*). Lu did not allege that these searches

---

[3] Lu identified non-party COs by initials only in the complaint.

3

were retaliatory in nature whatsoever, and asserted that they are not at issue in this action. (*Id.*).

### 3. The Search of Lu's Cell and Resulting Misbehavior Report

The day after Lu submitted his third and last grievance, September 22, 2023, COs performed a search of Lu's cell at 7:45 a.m. (A28). According to Lu, the search of his cell resulted in COs recovering items, including pens, highlighters, a paper clip, and a sticker sheet that purportedly tested positive for a substance considered to be contraband by the Jail. (A29). The presence of these items in Lu's cell resulted in a misbehavior report—issued that same morning of the search of Lu's cell—charging him with the possession of contraband and disorderly conduct. (*Id.*).

### 4. The Administrative Hearing

Four days after the search of his cell, on September 26, 2023, Lu appeared before the disciplinary hearing officer, Captain Azim, to answer the charges contained in the misbehavior report. (A30). Lu admitted to possessing contraband, but asserted that he was "innocen[t] as to the sticker" that contained the prohibited substance. (*Id.*). Captain Azim found Lu guilty of the charges and sentenced him to 20 days in keeplock and terminated him from his work details, which caused him to lose his preferred housing accommodations and food perks. (A30-31).

### 5. Lu's Statements Regarding His Retaliation Claim

Lu alleges that the search of his cell was in retaliation for submitting the three grievances challenging the strip searches. Lu further alleges, speculatively and upon information and belief, that it was Captain Hermans who orchestrated these searches (A32). Lu asserts that the Appellees' alleged actions that serve as the basis for his retaliation claim include: (a) the search of his cell; (b) the fabricated misbehavior report; (c) the punishment, *i.e.*, twenty days in keeplock, loss of special housing, Captain Hermans's "smear" campaign of him, and not permitting his re-hire at his once-held coveted work details. (A28-31).

In an attempt to demonstrate that the aforementioned conduct was retaliatory, Lu asserts without any supporting details that:

a. "On information and belief, Captain Hermans, in his role as the Shift Commander that morning, ordered that [his] cell be searched." (A29).

b. "On information and belief, Captain Hermans ordered his subordinates to fabricate the contraband charges and to create the misbehavior report." (A30).

c. After the issuance of the misbehavior report, "Captain Hermans embarked on a weeks-long smear campaign to destroy [his] reputation." (A30).

d. "On information and belief, Defendants continue to deter their subordinates from rehiring [him]." (A32).

e. Sergeant S.B. asserted that the strip searches were the result of the later discovery of contraband. (*Id.*).

5

f. Captain Hermans ordered the search of Lu's cell to "manufacture reasonable suspicion to justify the strip searches," in order to stop Lu from filing grievances challenging the strip searches. (*Id.*).

g. Captain Hermans manufactured the contraband charges so as to retroactively create the illusion of the reasonable suspicion and justify the revocation of the work details and accompanying privileges. He further alleges that this was done to "ensure[] that no more grievances (or, for that matter, lawsuits) could be filed in connection with the strip searches." (A33).

h. Captain Azim was the disciplinary hearing officer and the liaison to the New York State Commission of Correction ("NYSCOC"). As a result, he was "predisposed to retaliating against grievance filers due to his conflicting responsibilities" and "incentivized to prevent meritorious inmate complaints from reaching NYSCOC and to present a rosy image of [DOC] to the same body." (A33).

i. "Captain Azim's competing interests resulted in a vicious cycle of retaliation that further discouraged [DOC] residents from exercising their First Amendment rights." (A34).

Additionally, Lu asserts that various COs made the following statements to him, which he claims demonstrate Appellees' retaliatory intent:

a. After he was transferred out of the preferred housing, CO "A.G., whom [he] previously worked under, remarked that 'I heard [Lu] [was] set up,' referencing the false contraband charge." (A34).

b. "Around the same time, [CO] J.A. jokingly called [Lu] a 'fucking idiot' for handing Captain Hermans a grievance. Sergeant C.C. shared the same sentiment." (*Id.*).

c. "[CO] I.A. suggested that [Lu] 'write to Captain Hermans' and tell him [he] [has] 'learned [his] lesson.'" (*Id.*).

d. "[COs] T.A., K.B., and B.C., when asked whether [Lu] could return to work, indicated that it would be 'up to Captain Hermans.'" (*Id.*).

6

    e. "Captain J.A. observed that [Lu] [is] unlikely to get another job because [he] 'pissed off the wrong captain,' also referring to Captain Hermans." (*Id.*).

## B.    The District Court's Decision on the Motion to Dismiss

The County and Defendants-Appellees ("Defendants") moved to dismiss Lu's complaint in its entirety. (SDNY ECF Nos. 22-24). In regard to his First Amendment retaliation claim, Defendants asserted that Lu had failed to allege: (1) that any adverse action was taken against him due to his filing a grievance, and/or (2) that a causal connection existed between his filing of grievances and the actions taken by jail officials—crucial elements of a First Amendment retaliation claim.

Lu did not respond to Defendants' motion to dismiss, instead relying on the arguments he made in response to Defendants' pre-motion letter. (SDNY ECF Nos. 15, 18, 21). In that response, Lu asserted that the allegations in his complaint were not conclusory. (SDNY ECF No. 18). He asserted that Defendants' analysis of the "adverse action" prong of the test for determining a First Amendment retaliation claim was flawed because Defendants looked at the events in question using a "piecemeal approach." (*Id.* at 2-3). He further asserted that "all of the alleged adverse actions," taken together, "flowed from a single event: [his] filing of a grievance on September 21, 2023 . . . [which] did, discourage similarly situated individuals—i.e., other inmate workers—from exercising their First Amendment rights." (*Id.* at 2-3).

In regard to the "causal connection" prong, Lu asserted that "[c]ausation . . . is . . . clear as day in this case," because, he continued, "[Captain] Hermans targeted my cell for a shakedown within hours of receiving a grievance from me, which in turn triggered the onslaught of the other adverse actions." (*Id.* at 3). Lu further asserted, in conclusory fashion, that his allegations were supported by "retaliatory motives behind [the individual defendants'] action." (*Id.*).

In a Decision and Order, dated November 7, 2024, the District Court granted Defendants' motion to dismiss. (A10-A24). As an initial matter, the District Court rejected Lu's allegations as "nothing more than conjecture" due to his reliance "almost exclusively on conclusory statements and legal conclusions lacking in factual support," referencing the alleged statements by COs and Lu's characterization of those statements without any factual basis. (A16).

The District Court also noted that (1) an inmate does not have a reasonable expectation of privacy in a jail cell that would entitle him to the protection against unreasonable searches and seizures and (2) random searches of inmates "are valid and necessary to ensure the safety and security of a prison and those within their walls." (A17). Because Lu's complaint did not properly allege an Eighth Amendment claim regarding the searches, the District Court dismissed Lu's complaint insofar as it challenged "impermissible searches . . . with prejudice." (A17-A18).

Second, the District Court concluded that the so-called fraudulent misbehavior report and the punishment levied as a result of the discovery of the contraband in Lu's cell could not serve as a basis for a retaliation claim because Lu "freely admits to . . . possessing the impermissible material (contraband) which resulted in a 20-day period of confinement." (A18). Thus, the District Court dismissed Lu's claim to the extent it was premised on the misbehavior report. (A18).

Third, the District Court determined that Lu's allegation of a "smear campaign" by Captain Hermans, even if it rose to *per se* defamation, was "insufficient to support a plausible claim of retaliation," and dismissed Lu's claim premised on defamation with prejudice.

The District Court thus dismissed Lu's First Amendment retaliation claim without prejudice, "except as to those claims premised [] on impermissible searches, [or a] fabricated misbehavior report for possession of contraband and defamation which are dismissed with prejudice." (A22).

The District Court also provided Lu an opportunity to file an amended complaint. Lu declined to do so. Instead, he moved for reconsideration, which was denied, and abandoned his *Monell* claims against the County. (A41-46). He then asked the District Court to dismiss his complaint entirely with prejudice, and enter a final appealable judgment. (A47-48). The District Court entered judgment in favor of Defendants-Appellees (A9). This appeal followed.

9

## STANDARD OF REVIEW

This Court reviews *de novo* a decision granting a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure and "may affirm on any ground that finds support in the record." *Kenlock v. Mele*, No. 22-2799, 2023 U.S. App. LEXIS 32629, at *3 (2d Cir. Dec. 11, 2023) (summary order).

"To survive a Rule 12(b)(6) motion to dismiss, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *DeBoe v. Du Bois*, 503 F. App'x 85, 86 (2d Cir. Nov. 27, 2012) (summary order) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While factual allegations pleaded in a complaint are assumed to be true for purposes of a Rule 12(b)(6) motion, the same cannot be said for legal conclusions. *DeBoe*, 503 F. App'x at 86 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## SUMMARY OF ARGUMENT

This Court should affirm the District Court's dismissal of the complaint. Lu failed to allege sufficient factual content in his complaint from which the District Court—or this Court—could reasonably infer that Captain Hermans or Captain Azim retaliated against him for filing grievances.

With respect to Captain Hermans, the facts alleged do not demonstrate that he had any personal involvement in the actions underlying Lu's grievance, nor do they

10

demonstrate that he engaged in an adverse action, Lu's conclusory (and speculative) assertions aside. Lu's assertions are also inconsistent—for instance, he admits that he possessed items deemed contraband, yet asserts that the misconduct report alleging he possessed contraband was fabricated. Neither this Court, nor the District Court, need credit those inconsistent assertions. Appellant also cannot establish causation. Indeed, the allegations in the complaint shed no light on why Captain Hermans—who was not alleged to be involved in the strip searches underlying Lu's grievances—would go through a concerted effort to punish Lu for something that Hermans had nothing to do with. This is just another speculative step too far.

With respect to Captain Azim, Appellant does not allege that he was involved in the cell search or the issuance of the misconduct report. And Appellant admits to at least part of the charges in the disciplinary report. Instead, Appellant theorizes a conflict of interest that does not in fact exist, and simply imagines that Azim must want to punish all inmates that file grievances—again, attempting to speculate his way to a viable claim. These conclusory allegations remain insufficient, and the District Court's decision should be affirmed.

## ARGUMENT

## THE DISTRICT COURT PROPERLY DISMISSED
## APPELLANT'S COMPLAINT

On appeal, Lu solely challenges the dismissal of his First Amendment retaliation claims against Captains Hermans and Azim. He does not challenge the dismissal of his *Monell* claim. (App. Br. 1, n.1).

"To prove a First Amendment retaliation claim, 'a prisoner must show (1) that the speech or conduct at issue was protected,[4] (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Sloley v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 24-662, 2025 U.S. App. LEXIS 11882, *6 (2d Cir. May 16, 2025) (summary order); *Kotler v. Boley*, No. 21-1630, 2022 U.S. App. LEXIS 27411, *2 (2d Cir. Sep. 30, 2022) (summary order); *Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003), *superseded by* 2003 U.S. App. LEXIS 13030 (2d Cir. Feb. 10, 2003).

While Lu's *pro se* complaint should be interpreted "to raise the strongest argument that [it] suggest[s]," this Court must also be "careful to require non-conclusory allegations" because "prisoner retaliation claims are 'easily fabricated,' and accordingly 'pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.'" *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003); *see*

---

[4] Appellees agree that Lu has sufficiently pleaded this prong, as grievances are protected speech.

*also Kenlock*, 2023 U.S. App. LEXIS 32629, at \*7; *Bacon v. Phelps*, 961 F.3d 533 (2d Cir. 2020). "This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

"A prisoner retains only 'those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system,' such as the goal of maintaining institutional safety and security." *Bacon*, 961 F.3d at 543. Therefore, this Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.* at 543. Whether a complaint is prepared by an attorney or a *pro se* litigant, prisoner retaliation claims must be "supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Kotler*, 2022 U.S. App. LEXIS 27411 at \*3; *see also Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009).

In order to state a cause of action for a constitutional violation, "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir.

13

2020) (quoting *Iqbal*, 556 U.S. at 676); *Pierce v. McCarthy*, No. 25-938, 2026 U.S. App. LEXIS 19459, *4 (2d Cir. Jul. 2, 2026) (summary order). Thus, "'[i]n order to survive a motion to dismiss a complaint, a prisoner plaintiff asserting First Amendment retaliation claims must allege . . . that the defendant took adverse action against the plaintiff.'" *Pierce*, at *2 (alterations in original accepted) (quoting *Davis*, 320 F.3d at 352).

"To establish an 'adverse action' in the prisoner context, the 'retaliatory conduct' must be such that it 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Kotler*, 2022 U.S. App. LEXIS 27411, *2 (quoting *Davis*, 320 F.3d at 352 (adverse action is defined objectively)). "Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." *Dawes*, 239 F.3d at 493.

> In making this determination, the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse. . . . Insulting or disrespectful comments directed at an inmate generally do not rise to this level.

*Davis*, 2003 U.S. App. LEXIS 13030, at *15.

Finally, "[i]n order to satisfy the causation requirement, allegations must be 'sufficient to support the inference that the speech played a substantial part in the adverse action.'" *Davis*, 2003 U.S. App. LEXIS 13030, at *18; *see also Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. Mar. 13, 2012) (summary order); *Dawes*, 239 F.3d at 492.

14

Here, Lu's complaint does not sufficiently allege that either Captain Hermans or Captain Azim were personally involved or "participated in the alleged constitutional deprivations.'" *Smith v. Levine*, 510 F. App'x 17, 20 (2d Cir. Jan. 31, 2013) (summary order). Nor does Lu's complaint sufficiently allege adverse action, or a causal connection between the filing of his grievances and the so-called adverse action, for either Appellee.

### A. Captain Hermans

#### 1. *Personal Involvement/Adverse Action*

Lu sued Captain Hermans, asserting conclusorily that "[o]n information and belief, Captain Hermans . . . ordered that my cell be searched" and the "fabrication of the contraband charge." (A29 ¶¶ 18, 42). These speculative statements fall well short of the sort of factual content Plaintiff would need to plead for plausible personal involvement.

A brief note here about the many allegations Lu pleads upon "information and belief" is prudent. Lu argues that the District Court erred when it rejected as "pure conjecture" allegations made "on information and belief." (App. Br. 15-20). While the District Court did note that Lu pleaded many of the complaint's allegations "on information and belief," such allegations are also speculative and/or amount to conclusion, not fact, as described in detail below. *Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008), which Lu argues controls, does not compel a different result. *Boykin*, a Fair

15

Housing Act case, involved facts supporting an inference of differential treatment against plaintiff where comparative information was exclusively controlled by the lender-defendant. *Id.* at 215. That case did not hold that a plaintiff may identify a supervisor as the author of unidentified subordinates' decisions—especially in a Section 1983 claim, where personal involvement is a prerequisite to liability—merely based on a guess. Even where pleaded on information and belief, allegations in a Section 1983 suit must still include factual matter that actually ties the defendant to the challenged act. The same goes for Plaintiff's citation to *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010). As with *Boykin*, the *Arista* copyright case demonstrates that pleading "on information and belief" may be permitted when facts are peculiarly or exclusively within a defendant's control, and where related pleaded facts make culpability plausible—not just possible. *Id.* at 120. The phrase "information and belief" does not amount to magic words that convert speculation into fact, as the below analysis makes clear.

Here, the facts, as alleged by Lu, counter any inference that Captain Hermans acted with retaliatory animus. The strip searches began before Lu filed a grievance; as such, the reasonable inference is that there was some suspicion Lu possessed contraband.[5] Further, there is no allegation that Captain Hermans ordered any of those searches. Indeed, Lu alleges that Captain Hermans was the morning shift commander

---

[5] Lu, in the complaint, challenges CO C.B.'s claim that the searches were "per departmental policy and procedure," asserting that he had never been searched in the prior 14 months on the same job. (A27 ¶ 12). Therefore, the reasonable inference is that the searches must have been based upon some suspicion of Lu.

on September 22, 2023. (A29 ¶ 18). As such, the reasonable inference is that he was not the shift commander in the prior evenings, when the strip searches occurred.

As for the cell search, it was performed by unidentified officers—not Defendants-Appellees. (A28). The conclusory allegation that Captain Hermans, "[o]n information and belief," ordered the search simply because he was the shift commander (A29) is entirely speculative. As noted, supervisory rank does not plausibly establish personal involvement or direction. *Tangreti*, 983 F.3d at 618.

Even if Captain Hermans ordered the search of Lu's cell, the reasonable inference is that it was a continuation of the previously-held suspicion that prompted the strip searches as opposed to retaliation for Lu submitting his post-search grievances, and therefore is not an adverse action.

Similarly, Lu speculates as to Captain Hermans's involvement in the misbehavior report, alleging that, "On information and belief Captain Hermans ordered his subordinate to fabricate the contraband charges and to create the misbehavior report." (A30 ¶ 26). But Sergeant S.B. issued the report, not Captain Hermans. (A29). Plaintiff alleges that S.B. said the matter was "above her pay grade" and that she was "following orders." (A30). Even considering this statement, she does not identify Hermans, describe the content of any order, or state that the "order" was to fabricate a part of the report—rather than, say, an order that she should issue an accurate report based on items found in Lu's cell, or serve the report. Further, S.B.'s statements are alleged to

17

have occurred following Lu's attempt to contest the charges with her. (A29-30). As is undisputed, Captain Azim resolves disciplinary charges, not Sergeant S.B., and therefore the reasonable inference is that she was conveying that Lu needed to address the charges with the disciplinary captain, not her.

Even if Hermans ordered that the report be issued, given Lu's admission to possessing several of the contraband items, his allegation is at best inconsistent—the contraband charges cannot be "fabricated" where Lu admits to their veracity. And neither this Court nor the District Court needs to credit inconsistent allegations. *Grant v. County of Erie*, 542 F. App'x 21, 23 (2d Cir. Oct. 17, 2013) (summary order) ("This Circuit has recognized an exception to the rule that a court must accept all factual assertions as true when attenuated allegations supporting the claim are contradicted by more specific allegations in the Complaint or when a claim is based on wholly conclusory and inconsistent allegations").

On appeal, Lu continues to claim that the disciplinary report is fraudulent, while trying to minimize Lu's actual admission. (App. Br. 23). However, Lu again "admits that he possessed the stationery items," and only asserts that "he *thought* he was allowed to have them." (*Id.* (emphasis added)). His thought or belief that he could possess the prohibited items does not make the disciplinary report false, and he does not allege that the policies at the Jail actually allowed him to have these items. With respect to the stickers, Lu only alleges that they were swabbed and tested at the mail room at the time

18

of delivery. (A29 ¶ 24). He never alleges that they were actually free of contraband at the time of the search. Thus, the reasonable inferences that can be drawn are either: (1) the test in the mailroom produced a false negative; (2) the test after the search produced a false positive; or (3) the stickers acquired the contraband after passing through the mailroom and coming into and remaining in Lu's possession.

While a false disciplinary report issued following protected conduct can constitute an adverse action for First Amendment retaliation claims in some circumstances (*see Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004)), the plaintiff must still plausibly allege *falsity* (and the other elements of retaliatory motive and the defendant's personal involvement) in order for his claim to withstand a dismissal motion. Indeed, every case Lu relies upon in his brief deals with the filing of actual false charges against the plaintiffs. *See Gill*, 389 F.3d at 384 ("filing of false misbehavior report against [the plaintiff] and his sentence of three weeks in keeplock"); *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2003) (alleged filing of a false disciplinary report in retaliation); *Colon v. Coughlin*, 58 F.3d 865, 868 (2d Cir. 1995) (same).

Here, Lu admitted to the possession of contraband in the form of pens, highlighters, and a paper clip (A29-30). The fact that the contraband Lu admitted to possessing consists of stationery products (A30) and not a dangerous instrument does not make the misbehavior report a false one. Indeed, "[c]ontraband is any item that is possessed in violation of prison rules. Contraband obviously includes drugs or weapons,

19

but it can also be money, cigarettes, or even some types of clothing." *Harris v. Miller*, 818 F.3d 49, 62 (2d Cir. 2016) (citing *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318 (2012)).

This Court's decision in *Kotler*, cited above, is instructive. In *Kotler*, the plaintiff inmate asserted that prison officials had retaliated against him for "his participation in the prison inmate grievance program" when they "searched his cell, [drafted] a *false* misbehavior report, confined him to special disciplinary units for three months, and testified falsely at his disciplinary hearing." *Kotler*, 2022 U.S. App. LEXIS 27411 at *1, 4 (emphasis added). The plaintiff argued that "'the question [was] not whether [a] search itself' was an adverse action, but 'whether the overall and collective actions' of the defendants constituted adverse action." *Id.* at *3.

The *Kotler* Court stated that it "assess[es] adverse action by 'look[ing] to the specific circumstances in which retaliation claims arise," finding that:

> It is thus plausible that a cell search, the issuance of a disciplinary report based on an item that would usually just be thrown away, a *false* disciplinary report, placement in disciplinary housing, and false testimony at a disciplinary hearing could deter prisoners 'of ordinary firmness' from exercising their constitutional right to file grievances.

*Id.* at 3-4 (emphasis added). It was crucial, in *Kotler*, that the plaintiff alleged that "the defendants 'normally would have . . . simply discarded' the contraband found in his cell." *Id.* at 7 (ellipses in original). Here, there is no such allegation.

20

On the other hand, in *Kenlock*, this Court found that "[a]dditional searches and pat frisks, verbal harassment," as well as "an alleged unsuccessful attempt to induce [the inmate plaintiff] to violate jail rules for borrowing razors, and a less-than-one-day lockdown [did] not constitute adverse actions under the *Davis v. Goord* standard," *Kenlock*, 2023 U.S. App. LEXIS 32629, *8. *Kenlock*, as well as *Kotler*, demonstrates the kinds of factual allegations needed to pass muster on a 12(b)(6) motion, because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes*, 239 F.3d at 491. Inmates must "tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse," due to the nature of imprisonment. *Davis*, 2003 U.S. App. LEXIS 13030, *15.

The only factual, nonconclusory allegations that do regard Hermans do not relate to any constitutional deprivation, retaliatory motive, or adverse action. For instance, Lu alleges that Captain Hermans "would not accept [Lu's third grievance] because the . . . form wasn't filled out correctly." But this does not amount to an adverse action or constitutional violation—indeed, the form was ultimately accepted after Lu made the necessary corrections. (A29 ¶19). Captain Hermans is also alleged to have "embarked on a weeks-long smear campaign to destroy [Lu's] reputation . . . falsely and repeatedly claim[ing] to other WCDOC staff, including [Lu's] work supervisors, that [he] had

possessed drugs." (A30). But such an alleged "smear campaign"—even were it true—does not rise to the level of an adverse action.

As this Court held in *Davis*, "[i]nsulting or disrespectful commends directed at an inmate generally do not rise to [the] level" of a retaliatory action. 2003 U.S. App. LEXIS 13030, *15-16. In *Dawes*, this Court found that referring to the inmate "as 'an informant' during discussions with unidentified inmates" and calling the inmate "'a rat' to his face" "do not constitute adverse actions and thus do not make out claims of retaliation." 239 F.3d at 492.

## 2. Causation

Appellants rely heavily on temporal proximity as the basis for the causal nexus necessary to plead retaliation. This Court has held that temporal proximity between a grievance and an alleged adverse action "may serve as circumstantial evidence of retaliation." *Hayes v. Dahlke*, 976 F.3d 259, 273 (2d Cir. 2020) (internal quotation marks omitted). "Especially when the grievance did not involve the defendant, however," this Court has "require[d] further allegations to plausibly establish retaliatory animus." *Walker v. Senecal*, 130 F.4th 291, 299 (2d Cir. 2025) (citing *Kotler*, 2022 U.S. App. LEXIS 27411); *Dorsey*, 468 F. App'x at 27-28 (explaining that a "temporal connection does not suffice to plead causation" when the plaintiff "has not provided any plausible reason why [one officer] would file an allegedly false misbehavior report other than that [the plaintiff] filed a grievance against [a different officer]")).

22

"Without such allegations, a mere 'temporal connection does not suffice to plead causation.'" *Walker*, 130 F.4th at 299 (quoting *Dorsey*, 468 F. App'x at 28). Here, there is absolutely no reason identified, or even intimated, as to why Captain Hermans would want to retaliate against Lu for his filing a grievance regarding a strip search conducted by another officer. As discussed, there is no allegation—whether on information and belief or otherwise—that Hermans ordered the searches (and as discussed above, the reasonable inference is that he did not), nor that he conducted any of the searches. Thus, temporal proximity is insufficient to plead causation.

In *Dorsey v. Fisher*, the plaintiff-inmate, Dorsey, filed a First Amendment retaliation claim against numerous State correction officers, asserting, *inter alia*, that CO "A" retaliated against Dorsey because he filed a grievance against CO "B." 468 F. App'x at 27. But this Court explained that Dorsey "ha[d] not provided any plausible reasons why [CO A] would file an allegedly false misbehavior report" in retaliation for the grievance against CO B, and the Court thus found his allegations "insufficient to show [CO A's] retaliatory intent." *Id.*

The cases relied upon by Appellant do not compel a different conclusion. In *Morales v. Mackalm*, this Court determined that temporal proximity supported an inference of causation where the grievance was about defendant A, defendant A was subsequently interviewed about the grievance, and then defendant A participated in the adverse action. 278 F.3d 126, 313 (2d Cir. 2002). In *Colon v. Coughlin*, the inmate had

23

directly sued one of the defendants for not letting him participate in the facility's Family Reunion Program, and the inmate alleged that shortly after he was deemed eligible to participate, that defendant was involved in bringing him up on disciplinary charges to prevent his participation. 58 F.3d 865, 872 (2d Cir. 1995). In *Espinal v. Goord*, the inmate had brought a prior civil rights suit against one of the defendants and, after the dismissal of the lawsuit, that defendant, with others, allegedly beat the inmate. 558 F.3d 119 (2d Cir. 2009). Thus, in all of those situations, there was a *prior* complaint by the inmate about the defendant, followed closely by an adverse action by that same defendant. Those facts are not present here.

Further, the comments Lu attributes to other COs do not establish causation. First, Lu asserts that Sgt. S.B. misattributed the strip searches to the discovery of contraband in his cell. (A32). He then attributes this error, by a non-party, to "pretext." (App. Br. 14). This cannot be. There is no dispute the strip searches occurred prior to the cell search. That S.B. made an error in reviewing a grievance cannot demonstrate what Hermans's motivation was.

Second, Lu asserts his subjective belief that multiple other comments were related to his grievances—Azim saying he could "see why [Lu's] cell got searched" (A30), and CO A.G. saying "I heard you were set up" (A34). But the relationship between these statements and the grievances is solely Lu's speculation, and thus insufficient to show causation with respect to Hermans. Neither of these comments

24

actually identifies Hermans, and each has more reasonable interpretations than Lu's speculation. Azim's comment could simply be that he understood the cell was searched because of the presence of various contraband. A.G's comment—which is (at best) double hearsay from an unidentified source—does not specify *anyone* who purportedly "set up" Lu; and given Lu's admission to possession of contraband (whether intentional or not), it is clear he was not set up.

The other comments, which purportedly name Hermans, still do not get Appellant over the hurdle. A CO's purportedly calling Lu an "idiot" for handing Hermans a grievance (A34) does not demonstrate why Hermans would actually retaliate against Lu for the grievance, particularly where Hermans was not the subject of the grievance. A CO's allegedly offering Lu advice to tell Hermans that Lu had "learned [his] lesson," that he had "pissed off the wrong captain" (purportedly referring to Hermans), or that Hermans would determine when Lu could return to work (*id.*) also fall short of plausibly pleading retaliatory motive or causation. All of these comments came after Lu's conviction on the disciplinary charges. Hermans could (quite reasonably) be upset that an inmate trustee, who "managed to rise through the ranks and eventually secure four coveted positions," (A27) violated the rules of the Jail and had contraband in his cell. And a comment from COs that they were not decisionmakers as to Lu's future employment, but that a captain was, is no indication of retaliation, just a statement of how the Jail operates.

25

Ultimately, Lu's speculation does not provide a sufficient basis to allege causation, and therefore the District Court appropriately dismissed the complaint.

### B. Captain Azim

#### 1. *Personal Involvement/Adverse Action*

Lu's asserted claim against Captain Azim is even weaker. Captain Azim was not alleged to have been involved in the search of his cell or the creation of the disciplinary charges. Thus, he has no personal involvement in those matters, and Lu cannot state a claim against Azim for those.

Rather, the allegations merely relate to Azim's dual roles in presiding over the administrative hearing and serving as the liaison to the NYSCOC. (A33). Indeed, even on appeal, Appellant focuses on his arguments that Azim had a "conflict of interest and predisposition" against Lu because he was "institutionally invested in keeping detainee grievances from reaching that body." (App. Br. 19).

As a threshold matter, Lu's claims of a conflict are meritless. Lu is certainly entitled to an impartial hearing officer. However, as this Court has expressly held (in the same paragraph quoted by Appellant (App. Br. 20)), "the independent hearing officer need not come from outside the prison." *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996); (*see* App. Br. 20). This Court explained further that "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges generally. It is well recognized that prison disciplinary hearing officers are not

held to the same standard of neutrality as adjudicators in other contexts." *Allen*, 100 F.3d at 259. Lu's claim that Azim "has warped incentives" is wholly speculative, and presumes that he somehow bears a unique institutional burden. (App. Br. 19). Lu's speculation that Azim does not want grievances to be filed "to present a rosy image of WCDOC" to the NYSCOC is the precise type of conclusory allegation that should be disregarded.

Additionally, this allegation does not describe a personal retaliatory motive against Lu. Whether Captain Azim was generally "predisposed"—and there is no factual allegation from which to draw such an inference—does not translate into a specific event. Put another way, Captain Azim's alleged "predisposition" does not mean that he retaliated against Lu in this case—especially, where, as here, Lu admitted to (at least part of) the contraband charge. (A30).

## 2. Causation

As for the result of Lu's hearing: Captain Azim's decision affirming the charges against Lu, without more, does not show retaliatory motive, or that protected speech substantially motivated Captain Azim's decision. Anything but, since Lu himself admitted to possessing the stationery items identified in the report, and the report also identified a sticker sheet that allegedly tested positive for a contraband substance. (A29-30). *See Holland v. Goord*, 758 F.3d 215, 226 (2d Cir. 2014) (dismissing retaliation claim where the "disciplinary action would have occurred 'even absent the retaliatory

27

motivation,' which [may be satisfied] by showing that the inmate 'committed the . . . prohibited conduct charged in the misbehavior report'"). While Appellant asserts he did not know those items were prohibited, and alleges that Azim refused to allow Lu to submit certain documentation, these allegations at most challenge the fairness of the proceeding consistent with a due process claim that Lu did not pursue. (*See* App. Br. 20 ("in the context of procedural due process challenges, not at issue here . . . .")). These allegations do not plausibly allege retaliatory motive against Azim.

Moreover, Azim was not the subject of Lu's grievances, and there is no allegation that Azim communicated with Hermans or any other CO about the grievances' contents. As noted above, "[w]ithout such allegations, a mere 'temporal connection does not suffice to plead causation.'" *Walker*, 130 F.4th at 299 (quoting *Dorsey*, 468 F. App'x at 28). In the same vein, neither causation nor retaliatory motive may be inferred as to one defendant merely because that defendant works for the same agency as the person who allegedly took the adverse action against a plaintiff. *Wright v. Goord*, 554 F.3d 255, 274 (2d Cir. 2009).

Further, Captain Azim's alleged statement—"I see why your cell got searched" (A30) does not mention a grievance, retaliation, or Hermans. Lu's assertion that this statement was an "unmistakable reference" to his grievance filing is a speculative conclusion that the Court need not accept, particularly when the statement might have

referred to the charges, or the materials identified in the report. *See Iqbal*, 556 U.S. at 678.

Additionally, with respect to the allegations in paragraphs 48 through 52 of the complaint—that certain other COs made statements that may have referred to Captain Hermans—none of those statements are alleged to be attributable to or about Captain Azim (a further reason why this Court should affirm the dismissal of the complaint as against him). (*See* A34 ¶ 34).

The allegations against Captain Hermans and Captain Azim, both individually and together, do not state a cause of action for First Amendment retaliation. As such, the decision of the District Court should be affirmed.

## CONCLUSION

For the foregoing reasons, Defendants-Appellees respectfully request that this Court affirm the judgment of the District Court in all respects.

Dated:  July 27, 2026

Respectfully submitted,

**JOHN M. NONNA**
**Westchester County Attorney**

/s/Jason S. Whitehead
Associate County Attorney
148 Martine Avenue, Rm 600
Michaelian Office Building
White Plains, New York 10601
(914) 995-4194
jswa@westchestercountyny.gov

29

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the requirements of 2d Cir. R. 32.1(a)(4) because it has 6,961 words. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font and 13-point Garamond font for footnotes.

Dated:  White Plains, New York
   July 27, 2026

           /s/Jason S. Whitehead
           Associate County Attorney