# 25-3063-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

JIANQIAO LU,
*Plaintiff-Appellant*,

v.

GEORGE HERMANS, SULAHUDDEEN AZIM, WESTCHESTER COUNTY,
*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**REPLY BRIEF OF PLAINTIFF-APPELLANT**

Samuel Weiss
RIGHTS BEHIND BARS
1800 M Street NW FNT 1
#33821
Washington, DC 20033
(202) 455-4399

*Attorney for Plaintiff-Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................ii

INTRODUCTION.............................................................................................1

ARGUMENT ....................................................................................................2

I.      All of Defendants' Arguments Rely on Inferences in Their Favor.................2

II.     Lu Plausibly Alleged Personal Involvement by Captain Hermans.................9

III.    Lu Plausibly Alleged an Adverse Course of Conduct .................................11

IV.    Lu Adequately Pleaded Causation as to Captain Hermans..........................14

V.     Lu Also Stated a Claim Against Captain Azim ............................................16

CONCLUSION ...............................................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2d Cir. 2012) ...............2

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) .................................10

*Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008)...............................................10, 11

*Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003) ..................................................13, 14

*Davis v. Velez*, 797 F.3d 192 (2d Cir. 2015) ...........................................................7

*Dawes v. Walker*, 239 F.3d 489 (2d Cir. 2001)................................................13, 14

*Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009) ...............................................14, 15

*Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002) ...........................................15, 16, 17

*Holland v. Goord*, 758 F.3d 215 (2d Cir. 2014)..............................................16, 17

*Kotler v. Boley*, No. 21-1630, 2022 WL 4589678 (2d Cir. Sept. 30, 2022)
(summary order)....................................................................................12, 13

*Lynch v. City of New York*, 952 F.3d 67 (2d Cir. 2020)...........................................8

*Walker v. Senecal*, 130 F.4th 291 (2d Cir. 2025) ..................................................11

**Rules**

Fed. R. Civ. P. 8(a).................................................................................................10

Fed. R. Civ. P. 12(b)(6)............................................................................................2

ii

## INTRODUCTION

Jianqiao Lu filed a series of grievances against unjustified strip searches. The morning after he filed a third grievance which, for the first time, threatened litigation, jail officials shook down his cell, damaged his property, and falsely charged him with disorderly conduct and possession of contraband, including drugs. Jail officials then suspended him from his jobs, evicted him from his housing unit, and sent him to solitary confinement for twenty days. Close to ten staff members told or implied to Lu that this outsized punishment was the result of antagonizing the wrong staff member through filing grievances.

In his opening brief, Lu explained that the district court's three bases for dismissing his complaint for First Amendment retaliation were in error. First, the court ruled for Defendants because their conduct was not independently unconstitutional. But this is unnecessary to establish a First Amendment retaliation claim. Defendants do not defend this basis for the district court's ruling.

Second, the court dismissed Lu's allegations as "conclusory," exclusively citing a handful of allegations Lu made on "information and belief." But this Court explicitly permits such pleading under certain circumstances and those were met here. More importantly, Lu's complaint was full of concrete allegations not pled in this fashion. Defendants do not contest Lu's interpretation of this Court's law on

1

"information and belief" pleading but instead point to many of Lu's other allegations and deem them, incorrectly, as conclusory.

Finally, the court held that Lu could not bring a claim regarding fabricated contraband charges because he admitted to possessing drugs. He did not. Defendants do not defend (or mention) the district court's conclusion. Lu did not admit to possessing contraband of any kind. The court's conclusion that Defendants would have taken the actions they did absent a retaliatory motive requires inferences in their favor.

Unable to defend the district court's reasoning, Defendants provide their own. The core of their argument is a request—sometimes implicitly but often explicitly— that this Court make inferences in their favor in reading Lu's *pro se* complaint. Defendants will have the opportunity to ask a factfinder to interpret ambiguities in their favor, but they cannot ask this Court to do so on a *de novo* review of a Rule 12(b)(6) dismissal. This Court should reverse and remand for further proceedings.

## ARGUMENT

### I.     All of Defendants' Arguments Rely on Inferences in Their Favor.

On a Rule 12(b)(6) motion, this Court may not choose "between two plausible inferences" even if it finds one of them more plausible than the other. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). Lu's *pro se* complaint is short and tells a straightforward story. Defendants largely do not contest

2

the legal interpretation in Lu's opening brief. Instead, they contest Lu's meaning of his own complaint and then ask this Court (often explicitly) to make the inferences that benefit them. This request to make inferences in their favor pervades every step of Lu's allegations:

- On September 18, 2023, a jail official told Lu he would be strip searched daily upon leaving his job per departmental policy. A-27–28. Lu said he had never been strip searched before in the previous fourteen months and asked to see the policy. A-28. The staff member refused to show it to him. *Id.* Lu consented to the search, which found nothing. *Id.* Defendants write that "the reasonable inference is that the searches must have been based upon some suspicion of Lu." Ans. Br. 16; *see also id.* ("the reasonable inference is that there was some suspicion Lu possessed contraband"). There is no allegation in the complaint to support the inference that Lu had given officials any reason to suspect him.

- After two more strip searches the next two days, Lu wrote a grievance and physically handed it to Captain Hermans. A-28. Hours later, Lu was awoken by staff shaking down his cell. A-28–29. Defendants write that "if Captain Hermans ordered the search of Lu's cell, the reasonable inference is that it was a continuation of the previously-held suspicion that prompted the strip searches." Ans. Br. 17. The "previously-held suspicion"

3

mentioned here is the "reasonable inference" made above, with a second one now piled atop. There is again no support in Lu's complaint for the conclusion that any staff member had any suspicions of Lu prior to the shakedown of his cell.

- Captain Hermans rejected the third grievance minutes after the search. A-29. Lu fixed the "purported" error and gave it right back. *Id.* Defendants ignore that Lu alleges that the error was "purported" and not genuine, writing that the rejection could not have demonstrated hostility to Lu because "the form was ultimately accepted after Lu made the necessary corrections." Ans. Br. 21. Lu had alleged that the purported corrections were not necessary.

- After Lu resubmitted the grievance, a staff member arrived minutes later and gave him a misbehavior report charging him with "Disorderly Conduct" and "Possession of Any Contraband." A-29. The complaint alleges no conduct justifying his being charged with and ultimately found guilty of "Disorderly Conduct." Defendants' argument never mentions that Lu was found guilty of "Disorderly Conduct."

- The contraband charge was based largely on a sticker sheet purportedly testing positive for a substance considered contraband, i.e., drugs. A-29. Lu offered to show the sergeant the package receipt for these stickers,

4

which would show that the mail room had swabbed the package to test it for drugs and accepted it. *Id.* The sergeant declined to look at this critical information, telling Lu "that the matter was 'above her pay grade' and that she was just 'following orders.'" A-30. Defendants write that the sergeant did not identify Hermans by name or state what the order was that she followed. Ans. Br. 17. The "order" could have been "say, an order that she should issue an accurate report based on items found in Lu's cell" rather than an order to write a false disciplinary ticket. *Id.* Also, as Captain Azim is the staff member who resolves the disciplinary hearings, "the reasonable inference is that she was conveying that Lu needed to address the charges with the disciplinary captain, not her." Ans. Br. 18. There are no allegations in the complaint to support these alternative readings.

- Lu's other contraband charges were for possessing "pens, highlighters, and a paper clip," which Lu believed he was allowed to have as they had never been confiscated before in past searches. A-29. Lu admitted to possessing stationery. His complaint, however, never says either that he knew the stationery was contraband or that it was *in fact* contraband rather than inaccurately described as such. Defendants' answering brief repeatedly states that "Lu admitted to possessing contraband." Ans. Br. 4. It requires an inference in favor of Defendants to conclude that Lu's complaint

conceded that "pens, highlighters, and a paper clip" actually were contraband rather than the basis for a false allegation of contraband possession.

- Lu's complaint makes clear that the complaint against him for drug possession was false. Lu alleges that he "contested the veracity" of the charge because the substance "had previously been tested and cleared by the Mail Room." A-29. Captain Hermans, Lu alleged, "falsely and repeatedly claimed … that [Lu] had possessed drugs." A-30. This, Lu writes, was a "lie." A-30 n.7. The contraband charge, he wrote, was a "fabrication." A-33. It was "false." A-34. Defendants read all of this and argue that the only reasonable reading of Lu's complaint was that the stickers somehow passed the mailroom's inspection but actually did test positive for drugs. "[T]he reasonable inferences that can be drawn are either: (1) the test in the mailroom produced a false negative; (2) the test after the search produced a false positive; or (3) the stickers acquired the contraband after passing through the mailroom and coming into and remaining in Lu's possession." Ans. Br. 19. No allegations in the complaint support Defendants' interpretation.

- When Lu received a response to his third grievance, Sergeant S.B. justified the strip searches by the finding of contraband in his cell. A-32. This

6

cannot be, as the former preceded the latter. Lu's inference is that Sergeant S.B. was limiting the paper trail for staff's pattern of retaliation. Defendants ask instead for an inference that S.B. (despite being intimately involved in these incidents) made a good-faith "error in reviewing a grievance." Ans. Br. 24. That is, S.B. acted negligently rather than intentionally. *Id.* No allegations in the complaint support that reading.

- When Captain Hermans transferred Lu to the Old Jail, an officer whom Lu had worked under told him, "I heard you were set up." A.34. Defendants write that there are "more reasonable interpretations" of this statement than Lu's reading, which was that he was, in fact, set up. *See Davis v. Velez*, 797 F.3d 192, 202 (2d Cir. 2015) (using the phrase "set up" to describe planting drugs on someone). Defendants do not explain what these other, more reasonable interpretations are. Instead, they write that "it is clear he was not set up, given Lu's admission to possession of contraband." Ans. Br. 25. This is wrong both because Lu did not admit to possessing contraband and because, even if he did, the search, fabrication of drug possession, and outsized punishment would still have constituted "being set up."[1]

---

[1] Defendants also attack this allegation because it contains "double hearsay." Evidentiary objections of this kind, however, are inappropriate in defending a (continued…)

7

- Captain Azim told Lu at the outset of his disciplinary hearing that "I see why your cell got searched." A-30. Lu, who was present, took this as "an unmistakable reference to [his] grievance filing." *Id.* Defendants argue that this "statement *might* have referred to the charges, or the materials identified in the report." Ans. Br. 28–29 (emphasis added).

- Two staff members told Lu that he was a "fucking idiot" for "handing Captain Hermans a grievance." A-34. Defendants argue this is not evidence of retaliatory motive because the comments do not explain "why Hermans would actually retaliate against Lu for the grievance," which was not against him personally. Ans. Br. 25. No allegations in the complaint support an alternative explanation, and Defendants do not suggest one.

- When Lu asked when he could return to work, staff members told Lu that it would be "up to Captain Hermans." A-34. Defendants argue that "a comment that they were not decisionmakers as to Lu's future employment, but that a captain was, is not indication of retaliation, just a statement of how the jail operates." Ans. Br. 25. The complaint does not contain any allegation that a supervising Captain makes individual employment

---

dismissal for failure to state a claim. *Lynch v. City of New York*, 952 F.3d 67, 82 (2d Cir. 2020) ("Admissibility … is an issue for trial or summary judgment; in order to state a claim that is sufficiently plausible to avoid dismissal at the pleading stage, the fact asserted need not be presented in a form that would be admissible at trial").

8

decisions at the jail. Lu was only formally unable to work for thirty days after his discipline, A-32; at the same time, Captain Hermans went on a "weeks-long smear campaign to destroy [Lu's] reputation" including with his "work supervisors," A-30. Lu's inability to work therefore seems to arise from Hermans's retaliation and not "how the jail operates." Concluding that Hermans makes individual employment decisions at the jail (and on neutral or merits-based grounds) would require an inference in Defendants' favor.

- One staff member told Lu to write to Captain Hermans and tell him he "learned his lesson." A-34. Another told him he "pissed off the wrong captain." *Id.* Defendants write that Hermans has other reasons he could have been angry at Lu. Ans. Br. 25. "Hermans *could* (quite reasonably) be upset that an inmate trustee … violated the rules of the Jail and had contraband in his cell." *Id.* (emphasis added).

Above are thirteen occasions in which Defendants have asked for inferences in their favor in this Court's review of the dismissal of a concise and *pro se* complaint. This alone is sufficient for this Court to reverse. Defendants have failed to engage in the exercise of determining whether Lu stated a claim when his allegations are read as liberally as possible. Their legal arguments, discussed below,

9

are all downstream of a reading of the factual allegations that this Court does not permit.

## II.    Lu Plausibly Alleged Personal Involvement by Captain Hermans.

This Court permits "information and belief" pleading when facts are exclusively in a defendant's control and related facts make culpability plausible. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008). Lu explained in his opening brief that this case meets both prongs. Op. Br. 16–19.

Defendants distinguish *Boykin*, writing that the case "involved facts supporting an inference of differential treatment against plaintiff [sic] where comparative information was exclusively controlled by the" defendant. Ans. Br. 16. This does not mean, Defendants write, that a plaintiff can "identify a supervisor as the author of unidentified subordinates' decisions … merely based on a guess." Ans. Br. 16. The plaintiff must instead "still include factual matter that ties the defendant to the challenged act." *Id.*

This analysis is wrong on both counts. First, the plaintiff in *Boykin* lacked facts supporting differential treatment. The defendant argued that the plaintiff's complaint "contains *not one* specific assertion or instance of preferential treatment," as necessary to establish her claim. *Boykin*, 521 F.3d at 215. This Court rejected this defendant's argument: U.S. Supreme Court precedent "explicitly disavow[s]

10

that Rule 8(a) requires any plaintiff—let alone a *pro se* plaintiff—to plead 'specific facts.'" *Id.* The plaintiff in *Boykin* was treated poorly, was a member of a protected group, and alleged discrimination on the basis of protected categories based only on an information-and-belief allegation.

Second, and most importantly, Lu plainly "include[d] factual matter that tie[d] [Hermans] to the challenged act." Lu personally handed him, the shift supervisor, a grievance threatening litigation. A-28. That same morning Hermans rejected the grievance based on "purported errors." A-29. When Lu resubmitted, he received a false misconduct 45 minutes later. *Id.* When Lu attempted to show the sergeant evidence disproving the allegations, she told him it was "above her paygrade" and she was "following orders." *Id.* Multiple staff members later said or implied that Hermans had retaliated against Lu for filing this grievance. A-30; A-34. These allegations provide far more detail than this Court held sufficient in *Boykin*. Defendants can only distinguish binding precedent by, as described in Section I, remaking the factual record by explicitly asking for inferences in their favor.

## III. Lu Plausibly Alleged an Adverse Course of Conduct.

Lu plainly alleged an adverse course of conduct. Op. Br. 10–13. This Court analyzes the retaliatory actions in the aggregate to determine whether they collectively constitute adverse action. *Walker v. Senecal*, 130 F.4th 291, 302 (2d Cir. 2025). Defendants transferred Lu to a much worse housing arrangement; sent him

11

to solitary confinement for twenty days; permanently cost him highly paid and desirable jobs; and tarred him as a drug smuggler, which ruined his reputation in jail and even came up in his criminal proceedings. A-29–31.

Instead of arguing that this conduct does not aggregate to adverse action, Defendants argue that Lu failed to "plausibly allege *falsity*." Ans. Br. 19 (emphasis in original). This is wrong several times over. First, Lu alleged that he was falsely accused and convicted of "Disorderly Conduct." A-29–30. Second, Lu alleged that he was falsely accused and convicted of possession of contraband based on the false accusation that he possessed drugs. Third, Lu alleged he was falsely accused and convicted of possession of contraband based on possessing stationery, which he had no reason to believe was contraband and was not, in fact, contraband.

Defendants never rebut (or mention) Lu's conviction for disorderly conduct. They respond to his two contraband charges by asking for inferences in their favor: that Lu's stationery actually was contraband and that Lu's stickers actually did test positive for drugs. Ans. Br. 18–19. As described in Section I, that is inconsistent with the complaint, which is clear that his charges were false and never concedes that Lu possessed contraband of any kind.

Defendants find no recourse in this Court's precedent. They repeatedly rely on *Kotler v. Boley*, but the opinion involves strikingly similar facts to Lu's. No. 21-1630, 2022 WL 4589678, at *2 (2d Cir. Sept. 30, 2022) (summary order). In *Kotler*,

12

this Court held that "a cell search, the issuance of a disciplinary report based on an item that would usually just be thrown away, a false disciplinary report, placement in disciplinary housing, and false testimony at a disciplinary hearing could deter prisoners of ordinary firmness from exercising their constitutional right to file grievances." *Id.* That is exactly what Lu has alleged.

Defendants attempt to distinguish *Kotler* by writing that "[i]t was crucial, in *Kotler*, that the plaintiff alleged that the defendants normally would have simply discarded the contraband found in his cell," whereas Lu made "no such allegation." Ans. Br. 20. This conclusion is backwards. The plaintiff in *Kotler* actually conceded that he possessed contraband but explained that it was the kind that staff would usually throw away rather than react by initiating disciplinary proceedings. *Kotler*, No. 21-1630, 2022 WL 4589678, at *2. Lu did not concede that the stationery he possessed was contraband. And he went beyond saying staff would merely throw stationery away to allege that staff in past cell searches had not even done that but instead allowed him to continue possessing it.

Defendants are not helped either by invoking this Court's precedent that mere insults do not qualify as an adverse action. Ans. Br. 22 (citing *Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003) and *Dawes v. Walker*, 239 F.3d 489 (2d Cir. 2001)). Although both opinions qualified their statements, this Court in *Dawes* and *Davis* did hold that an "unnecessary statement of a prison guard" or an "[i]nsulting or

13

disrespectful comment[] directed at an inmate" is "generally" not an adverse action. *Davis*, 320 F.3d at 353; *Dawes*, 239 F.3d at 493. Lu's allegation is not, however, that Captain Hermans was rude or insulting to him. Lu alleged, instead, that Hermans's "smear campaign" prevented him from ever getting rehired and was even mentioned in Lu's criminal case. A-30. His complaint is about institutional punishment, not unkind words. When this "smear job" is added to the many other retaliatory acts, Defendants' actions plainly aggregate to adverse action.

## IV.     Lu Adequately Pleaded Causation as to Captain Hermans.

Lu sufficiently alleged a causal link between his protected activity and Hermans's conduct. Op. Br. 13–15. Defendants argue that Hermans had no incentive to retaliate against Lu because the grievance was not against him personally, thus severing the causal link. Ans. Br. 22–24. This is wrong on both the record and the law. First, Hermans was intimately involved with the grievance that spurred Defendants' retaliation. Lu personally handed Hermans a grievance, threatening litigation against a practice that was purportedly jail policy on a unit he supervised; Hermans rejected the grievance; Lu refiled the grievance. A-28–29. This is more than sufficient to allege personal involvement.

Even if Defendants were correct that the grievance did not involve Hermans, the inference that Hermans would never retaliate on behalf of another staff member is, again, an inference in Defendants' favor and one this Court has explicitly rejected

14

making. In *Espinal v. Goord*, the Southern District of New York granted summary judgment to defendants who were accused of beating a prisoner in retaliation for a lawsuit filed eighteen months earlier. 558 F.3d 119, 129 (2d Cir. 2009). This Court reversed. In doing so, it rejected some defendants' contention that there was no evidence they were even aware of the prior lawsuit. "Viewing the evidence in the light most favorable to Espinal, as [this Court] must, it is a legitimate inference that [defendant], as a member of [the prison's] emergency response team with [fellow defendant] on December 17, 1999, learned of the prior lawsuit from [fellow defendant], who was a defendant in the earlier lawsuit, or from other officers aware of the lawsuit, and took action in response to Espinal's protected activity." *Id.* at 130. Lu asks for a much smaller inference (as Hermans was certainly aware of protected conduct) in a more forgiving procedural posture (a *pro se* complaint versus summary judgment). Many prison retaliation claims involve staff retaliating in response to grievances directed at their colleagues rather than at themselves. *See id.* at 122 (explaining that staff who were not the subject of a lawsuit said "this is what happens to [i]nmates when they submit law suits *against us*" while beating a prisoner in retaliation) (emphasis added); *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (holding that a captain retaliated against a prisoner who had filed a grievance against a different staff member).

15

**V. Lu Also Stated a Claim Against Captain Azim.**

Although the district court's error is particularly clear as to Hermans, Lu also stated a claim against Captain Azim. Defendants err in arguing that Azim had "no personal involvement" in the adverse conduct against Lu. Ans. Br. 26. Azim opened the disciplinary hearing by prejudging the merits against Lu, telling him he could "see why [his] cell got searched." A-30. Lu asked to provide evidence that he received the stickers in an approved package, which Azim summarily denied. *Id.* Azim found him guilty of all charges, including the disorderly conduct charge which appears to lack any possible basis. *Id.* Azim then sentenced Lu to twenty days in solitary confinement, a punishment typically reserved for violence. A-33. Azim therefore played a crucial role in the adverse and retaliatory conduct against Lu.

Defendants are therefore wrong in writing that Lu's claims "merely relate to Azim's dual roles." Ans. Br. 26. Lu's allegations as to Azim's conflict of interest support the plausibility of his retaliatory conduct; they are not freestanding constitutional claims and do not purport to be.

Finally, Defendants err in invoking this Court's case law discussing when defendants may argue that the same disciplinary action would have occurred even absent retaliatory motive. *See Holland v. Goord*, 758 F.3d 215, 226 (2d Cir. 2014); *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002). *Holland* and *Gayle* discuss a burden-shifting and affirmative defense available on summary judgment, not a

16

pleading requirement. Regardless, the defense only applies when there is no dispute that the plaintiff committed all of the conduct at issue or at least the most serious. *Holland*, 758 F.3d at 226; *Gayle*, 313 F.3d at 682. Lu did not concede that he committed misconduct at all and certainly did not commit the most serious charged conduct—possession of drugs and disorderly conduct.

## CONCLUSION

This Court should reverse the dismissal of Lu's First Amendment retaliation claim and remand to the district court for further proceedings.

Dated:  August 10, 2026                Respectfully submitted,

                                        */s/ Samuel Weiss*

                                        Samuel Weiss
                                        RIGHTS BEHIND BARS
                                        1800 M Street NW
                                        FNT 1
                                        #33821
                                        Washington, DC 20033
                                        (202) 455-4399

                                        *Attorney for Plaintiff-Appellant*

17

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 3,844 words, exclusive of the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). The undersigned further certifies that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman and 14-point font.

Dated: August 10, 2026

/s/ Samuel Weiss
Samuel Weiss

Attorney for Plaintiff-Appellant

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d)(1)(B), I hereby certify that on August 10, 2026, I caused true and correct copies of the foregoing Reply Brief of Plaintiff-Appellant to be served on counsel of record, via filing on the Court's ACMS system, in accordance with Local Rule 25.1(h).

Dated: August 10, 2026

*/s/ Samuel Weiss*
Samuel Weiss

*Attorney for Plaintiff-Appellant*